### 24403. GRIMES, Sheriff v. BURCH, alias Jones.

SUBMITTED DECEMBER 12, 1967—DECIDED JANUARY 4, 1968.

*William E. Spence, Solicitor, James B. Webb, Hinson McAuliffe, Frank A. Bowers,* for appellant.

*W. H. H. Jones,* for appellee.

ALMAND, Presiding Justice. This appeal is from an order discharging the appellee from the custody of the appellant after a hearing on appellee's petition for a writ of habeas corpus.

Pauline Burch in her petition against T. Ralph Grimes, Sheriff of Fulton County, alleged that she was being illegally detained by Sheriff Grimes by reason of the following facts: On July 21, 1967, appellee Burch was convicted and sentenced to ten days in the City Stockade in the Municipal Court of the City of Atlanta for violating an ordinance of the City of Atlanta relating to "Drunk on Public Highway." On July 24, 1967, appellee escaped from the custody of the city authorities. Subsequently, appellee was arrested, charged with the offense of escape (Ga. L. 1955, pp. 578, 579; *Code Ann.* § 26-4509) and tried in the Criminal Court of Fulton County. Appellee was represented by counsel on this trial for escape and was found guilty and sentenced on September 14, 1967, to serve 3 months in the "Fulton County jail or public works camp, or such other place as the defendant can be legally confined." Appellee, at the time of the bringing of this petition, was in the custody of the appellant serving said sentence and she alleges said detention is "unconstitutional, illegal and void for the following reasons: Petitioner [appellee] shows that at her trial at the Municipal Court of Atlanta, a court not of record, she was never advised of her right to any counsel to represent her; did not have such a counsel and therefore had no one to protect any of her rights, constitutional or otherwise at the time of said trial.

"Petitioner further shows that it is a well-recognized principle of law in Georgia, and in the District Court of the Fourth Circuit that alcoholism is a disease rather than a crime, and therefore, any punishment given to her for drunkenness or any other offense directly related to her chronic condition of alcoholism is an abrogation of her rights under the 8th and 14th Amendments of the Constitution of the United States.

"Petitioner further shows that her drunkenness on the occasion described above, was an act beyond her own volition and that it resulted from a compulsive desire to drink characteristic of a chronic alcoholic."

On the hearing practically all the evidence introduced by the appellee pertained to her past record of 27 arrests for drunkenness and a report of a psychiatrist that in his opinion the appellee was a chronic alcoholic.

After this hearing the judge entered an order discharging appellee from the custody of the appellant. In so doing the court erred.

The appellee was in the custody of the appellant, not by virtue of the municipal court sentence, but by virtue of her conviction for escape while serving the sentence imposed by the municipal court. Appellee's contention that the municipal court sentence was void is without substance. "The fact that an accused may have been deprived of various procedural rights prior to conviction or sentence does not render his imprisonment so void as to justify escape. For example, deprivation of counsel does not invalidate the conviction so as to justify escape, and the failure to promptly grant a hearing or trial does not render the imprisonment so unlawful as to excuse an escape. However, where one is deprived of his constitutional right to a jury trial, or a preliminary examination required by statute, his confinement may be so void that his escape therefrom is justified." 27 AmJur2d 855, Escape, § 9. See also 70 ALR2d 1443, § 7. Where one is confined by lawful authority it is his duty to submit until delivered by due process of law. Tann v. Commonwealth, 190 Va. 154 (56 SE2d 47). See also 30A CJS 883, 884, Escape, § 5.

However, it is contended that the appellee had chronic alcoholism, a disease, at the time of her escape and therefore was not guilty of a crime. Code § 26-403 provides: "Drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness was occasioned by the fraud, artifice, or contrivance of another person, for the purpose of having a crime perpetrated." This section is a codification of the common law. "As to artificial, voluntarily contracted madness, by drunkenness or intoxi-

cation, which, depriving men of their reason, puts them in a temporary frenzy; our law looks upon this as an aggravation of the offense, rather than an excuse for any criminal misbehaviour." Blackstone Commentaries (4th Ed.), Vol. II, Book 4, p. 26.

Counsel for the appellee, in the trial court and in his brief in this court, argues in the main that, the appellee being a chronic alcoholic, it would amount to cruel and unusual punishment to punish her for violating the law and that the appellee "should not be crucified on a cross of public indifference to her condition." Though this argument may arouse our moral sympathy it should not control or influence our judgment.

A judgment based upon sentimental emotionalism has no more place in the administration of the criminal law than does a judgment based upon prejudice or passion. Chief Justice Bleckley well expressed this thought in an address on the subject of "Emotional Justice" when he said: "Even righteous indignation and holy horror are impertinent intruders in an affair of justice. Emotional justice has no standing in the forum of right reason, and ought to have none anywhere. . . With less emotional justice inside of the courthouse, there would be less, perhaps none at all, on the outside. No greater good could be done than by withdrawing emotion as a force from the administration of justice." 9 Ga. Bar Association Annual Report, pp. 54, 61.

The words of Justice Joseph Henry Lumpkin in *Choice v. State*, 31 Ga. 424, 473, 474, where the defendant's main defense on his trial for murder was intoxication, are appropriate to the present case. "Whether any one is born with an irresistible desire to drink or whether such thirst may be the result of accidental injury done to the brain, is a theory not yet satisfactorily established. For myself, I capitally doubt whether it ever can be. And if it were, how far this crazy desire for liquor would excuse from crime, it is not for me to say. That this controlling thirst for liquor may be acquired by the force of habit, until it becomes a sort of second nature, in common language, I entertain no doubt. Whether even a long course of indulgence will produce a pathological or organic change in the brain, I venture no opinion. Upon this proposition, however, I plant myself immovably; and from it, nothing can dislodge me but an Act of

the legislature, namely: that neither moral nor legal responsibility can be avoided in this way. This is a new principle sought to be ingrafted upon criminal jurisprudence. It is neither more nor less than this, that a want of will and conscience to do right, will constitute an excuse for the commission of crime; and that, too, where this deficiency in will and conscience is the result of a long and persevering course of wrongdoing." Justice Lumpkin went on to say: "The fact is, responsibility depends upon the possession of will—not the power over it. Nor does the most desperate drunkard lose the power to control his will, but he loses the desire to control it. No matter how deep his degradation, the drunkard uses his will whenever he takes his cup. It is for the pleasure of the relief of the draught, that he takes it. His intellect, his appetite, and his will, all work rationally, if not wisely, in his guilty indulgence. And were you to exonerate the inebriate from responsibility, you would do violence both to his consciousness and to his conscience; for he not only feels the self-prompted use of every rational power involved in accountability, but he feels, also, precisely what this new philosophy denies—his solemn and actual wrongdoing, in the very act of indulgence. Converse seriously with the greatest drunkard this side of actual insanity—just compose him, so as to reach his clear, constant experience, and he will confess that he realizes the guilt, and therefore the responsibility of his conduct. A creature made responsible by God, never loses his responsibility, save by some sort of insanity. There have always existed amongst men a variety of cases, wherein the will of the transgressor is universally admitted to have little or no power to dictate a return to virtue. But mankind have never, in any age of the world, exonerated the party from responsibility, except where they were considered to have lost rectitude of intellect by direct mental alienation."

The court erred in discharging the appellee from the custody of the appellant.

*Judgment reversed. All the Justices concur.*