43805.   BURGER v. THE STATE.

SUBMITTED JULY 1, 1968—DECIDED SEPTEMBER 5, 1968.

*Albert M. Horn*, for appellant.

*William E. Spence*, Solicitor, *Henson McAuliffe, James L. Webb, Frank A. Bowers, Lewis R. Slaton*, Solicitor General, *J. Walter LeCraw*, for appellee.

EBERHARDT, Judge. Admittedly there is a great surge of opinion among religious and social workers, and among some doctors, that alcoholism is a disease and that one who, being a chronic alcoholic, becomes drunk, should not be punished but should be treated for his condition. But, as was pointed out in Powell v. Texas, 392 U. S. 514, 522 (88 SC , 20 LE2d 1254), "there is no agreement among members of the medical profession about what it means to say that 'alcoholism' is a 'disease.' "

The theory that alcoholism is a disease and that it can be treated is relatively new. There is no wide experience which demonstrates whether it be right, particularly in several of the

recognized types of the condition. On the other hand drunkenness, either public or in the form here involved, has been regarded as a crime since long before this country had its founding as a republic. As was pointed out in Powell v. Texas, supra, while a jail term for the offense may not be "therapeutic" in the sense of effecting a cure of the underlying causes of the defendants' misbehaviour, it does serve to "dry them out," gets them off the street where they are exposed to danger in many ways, and may serve as an incentive to put some control on their drinking.

Chronic alcoholism was held not to be a defense to the offense of escape in *Grimes v. Burch,* 223 Ga. 856 (159 SE2d 69) where an excellent discussion is to be found of the matter of criminal responsibility on the part of one who commits an offense while drunk.

Just as was true in Powell v. Texas, supra, the record here is scanty, revealing little of the defendant's problem, or about the nature of alcoholism itself. Perhaps it is just as well, in view of the unsettled status of the views of the problem taken by the medical profession and the sociologists[1] up to this time. There may well come substantial advances in discovery of the nature of the problem and of what can be done about it, making desirable another look at it from this vantage.[2]

---

[1]"The over-indulgent drinker should not be encouraged in thinking that he is a sick person, University of Georgia sociologist Dr. Paul Roman declared Wednesday. This tends to bring on a truly alcoholic condition by giving the over-indulgent drinker reason to feel that he is not responsible for his actions, Roman said. 'I see a tendency towards defining behavior that does not constitute true addiction, and then defining alcoholism as a disease,' Roman said, speaking to about 250 persons attending the Southeastern School of Alcohol Studies at the university's Center for Continuing Education. Roman urged business and industry to exert 'constructive coercion' to force problem drinking employees to toe the line. 'This "sick concept" shouldn't be swallowed whole. Individuals who are called upon to use their own resources for recovery will be much better off in the long run,' he said." The Valdosta Daily Times, Aug. 15, 1968.

[2]See Kirbens, Chronic Alcohol Addiction and Criminal Responsibility, 54 ABAJ 877 (September, 1968).

But as matters now stand we apprehend that a reversal of this judgment is likely to result in having substantially all of those who are arrested on charges of drunkenness, or charges involving drunkenness, enter pleas of chronic alcoholism, whereupon they would simply be returned to the streets and the wine shops. As Mr. Justice Marshall reminds us in Powell v. Texas, 392 U. S. 514, 529, supra, "the medical profession cannot, and does not, tell us with any assurance that, even if the buildings, equipment and trained personnel were made available, it could provide anything more than slightly higher-class jails for our indigent inebriates. Thus we run the grave risk that nothing will be accomplished beyond the hanging of a new sign—reading 'hospital'—over one wing of the jailhouse."

While the Act of 1964 (*Code Ann.* § 88-101, et seq.), exhaustively revising, consolidating and codifying the laws relating to the Department of Public Health, its powers, duties, etc., and, inter alia, "to provide for hospitalization, detention, rehabilitation, and release of persons suffering from alcoholism," does, for that purpose, define alcoholism as an illness (*Code Ann.* § 88-401), it does not purport to and does not deal with drunkenness as a crime or as a defense to acts which the law makes criminal.

Moreover, it may be questioned as to whether the General Assembly can by its fiat declare some physical status to be or not to be an illness. Is it within that body's competence to establish or disestablish scientific facts? Are they qualified to do that which over the span of many centuries has been a peculiar province of the medical profession? Suppose the Assembly should adopt an Act declaring that measles or tuberculosis is not a disease, or that perspiring upon exertion is one, would the declaration become an established scientific or medical fact? We believe that this is a matter that must lie within the judgment of the medical profession.

It is still an offense to drive motor vehicles on the public highways of this State while drunk or even under the influence of alcoholic beverages, *Code Ann.* §§ 68-1625, 68-9927, and the General Assembly of 1968 has provided that one who drives vehicles on the highways impliedly consents to having his blood

tested for the alcoholic content, the result to be used as evidence in his prosecution for driving while drunk or under the influence. Ga. L. 1968, p. 448. If chronic alcoholism or dipsomania is to be accepted as a defense to a charge of drunkenness, would it not also be logical to accept it as a defense to a charge of driving while drunk? If so, how are we to eliminate or slow down the greatest cause of death on the highways? And why not accept a plea of pyromania by an arsonist, of kleptomania by a thief, of nymphomania by a prostitute, or a similar plea of impulse and non-volitional action by the child molester? Many other examples might be listed. What criminal conduct can be regulated or controlled if "impulse," a "feeling of compulsion," or of "non-volitional action" arising out of these situations is to be allowed as a defense. This Pandora's box had best be left alone for now.

*Judgment affirmed. Bell, P. J., Jordan, P. J., Hall, Pannell, Deen, Quillian and Whitman, JJ., concur. Felton, C. J., dissents.*

FELTON, Chief Judge, dissenting. Although the trial judge did not approve the brief of evidence attached to and made a part of the petition for certiorari he admitted in his answer to the writ that the document contained the brief of the evidence on the trial. Paragraph (1) of the brief of evidence is: (1) "Defendant, Albert Burger, is a chronic, compulsive alcoholic who has lost control over the use of alcoholic beverages," and Paragraph (2) is: "Defendant suffers from the disease of alcoholism and his drinking is non-volitional."

The cases cited in the majority opinion are not authority for the ruling in this case. In the first place, in *Grimes v. Burch,* 223 Ga. 856, supra, the defendant was punished for escaping and not for the offense for which he was confined, and every ruling on the question of the consequences of alcoholism was obiter and taken from an ancient discussion of views at a time when alcoholism as such had probably never been heard of. The Act of 1964 (*Code Ann.* § 88-401) recognizes alcoholism as an illness. How this court can say that this fact does not have any application in the field of criminal law is beyond my comprehension. The fact that the Department of Health has not made provision for the care of alcoholics who should be confined be-

cause of formerly recognized criminal acts is immaterial insofar as a person's constitutional rights are concerned. The Federal cases cited are not controlling because of the aforementioned Act of the General Assembly recognizing alcoholism as an illness. I think the trial court erred in view of the brief of evidence.