20 N.J. Super. 20 (1952)
89 A.2d 50
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK GLYNN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 12, 1952.
Decided May 29, 1952.
*21 Before Judges McGEEHAN, JAYNE and GOLDMANN.
Mr. H. Russell Morss, Jr., First Assistant Prosecutor of the Pleas of Union County, argued the cause for respondent (Mr. Edward Cohn, Prosecutor of the Pleas, attorney).
Mr. Alan Bruce Conlin argued the cause for appellant (Mr. H. Frank Pettit, attorney).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Defendant was found guilty of operating a motor vehicle while under the influence of intoxicating liquor, in violation of R.S. 39:4-50, after a *22 trial de novo before the Union County Court on appeal from the Municipal Court of the Borough of Roselle Park. He was sentenced as a second offender to the county jail for a period of 90 days, and his driver's license permanently revoked. The County Court also found defendant guilty of operating a motor vehicle while his driver's license stood revoked, in violation of R.S. 39:3-40, and imposed a fine of $100 and costs for this offense.
Defendant now appeals to this court from the County Court judgment of conviction on the drunken driving charge. The question he raises is: "Can a violation of R.S. 39:4-50 be substantiated by facts which disclose that the drunken condition of the defendant was due to a combination of alcoholic beverage and medication prescribed for him by a doctor?" In his supplemental brief defendant further argues that the State failed to establish the truth of the drunken driving charge beyond a reasonable doubt.
About midnight of October 1-2, 1950, a police officer noticed a truck coming toward him on Westfield Avenue, Roselle Park, weaving from curb to safety aisle and back. It had no front lights and dark smoke was pouring from the radiator. The officer brought the truck to a halt and ordered the defendant to shut off the ignition. He observed that the right front of the truck was damaged; the end of the bumper was hanging, the fender was dented, the headlight broken and the hood sprung and dented. When the defendant got out of the truck he staggered as he walked. His speech was slurred and his breath smelled of alcohol. The officer described defendant as "arrogant" both at the time of his arrest and later at the police station. In his opinion, defendant was under the influence of liquor and should not have been driving.
A radio car was called and defendant taken to the police station. There he was examined by the police physician between 12:21 and 12:50 A.M. He told the doctor that he had not seen a physician for two months, had not taken any medicine, and had sustained no injuries.
*23 Defendant admitted having had several beers, and more after that. He had a heavy alcohol breath, he staggered and swayed, his pupils were dilated and did not react to a beam of light, his speech was slurred and his conduct arrogant. The doctor found defendant's ability to concentrate poor. The usual tests were given. Defendant was asked to hold out first one arm and then the other, and to bring his finger to his nose while his eyes were closed. There was no coordination; he missed consistently, touching his lip, chin and cheek. He tried to pick a coin from the floor; he missed it and finally managed fumblingly to pick it up. He staggered and swayed in attempting to walk a straight line. Finally, it took him 15 minutes to add some figures, and the answer was wrong. The doctor concluded on the basis of all the tests and his observations that defendant was under the influence of liquor and in no condition to operate a motor vehicle.
The arresting officer and the two radio car men were present during the examination and confirmed the doctor's testimony. One of the latter testified that defendant first told the doctor he hadn't been drinking, but then admitted to having had four beers and perhaps more. The other testified that defendant was belligerent and uncooperative.
The defense testimony throughout was designed to establish that defendant's condition was due to the benadryl capsules he was taking for hay fever. His doctor testified that he had last seen defendant in August, when he prescribed three benadryl capsules a day for hay fever. It was his experience that benadryl tended to make a person drowsy. A medical expert testified that benadryl is an anti-histamine and may or may not have side effects, such as drowsiness, dizziness, dry mouth and slowed reaction time, depending on the person and the dosage.
Defendant's brother-in-law, a tavern owner, testified that defendant came to his place at 11:15 P.M. on October 1, 1950, and had three or four "short" beers. The defendant took the stand and said that he had Sunday dinner at home at 1 P.M., drove to Newark for a fuel pump part and spent *24 the afternoon and evening with friends playing cards. He denied drinking anything before dropping in at his brother-in-law's, where he first took a benadryl tablet (his earlier testimony was that he had taken two) and then had four or five short beers, at most. He had had nothing to eat since noon. He admitted having an accident while driving home from the tavern. He did not testify that he was drowsy or otherwise affected by the capsules. Nor did he specifically deny that he was in any degree under the influence of intoxicating liquor while driving home; that question was never asked of him, but the fact of his sobriety was left to inference.
Defendant quotes from the oral opinion delivered by the County Court judge at the close of the case, to support his contention that his condition upon arrest was due to a combination of alcoholic beverages and medication prescribed for him by his doctor:
"* * * there is no question that it was the combination of the drug and the intoxicating beverages which he took, four or five, or five or six glasses of beer that caused his condition."
But the court also said:
"The three police officers who saw him that night and the doctor who examined him were all of the opinion that this man was unfit to drive a motor vehicle on the highway that night. * * * A man who is taking medicine at this time should refrain from taking any intoxicating liquor. Four or five beers may have no effect on one person, but they may put another person to sleep or affect him so that he is unfit to drive a motor vehicle. This man, taking this drug and also four or five beers on an empty stomach, not having eaten since one o'clock, there is no question in my mind that he was unfit to drive a motor vehicle, and the cause of it was probably the drug and the alcoholic beverages which he imbibed.
I find the defendant, Frank Glynn, guilty of driving a motor vehicle while under the influence of intoxicating liquor * * *."
Defendant argues that R.S. 39:4-50 contemplates that intoxicating liquor shall be the only cause of the prohibited condition. If this were so then a driver who had been on the road from early morning to late at night and had nothing to eat could plead over-tiredness and an empty *25 stomach as contributing causes to intoxication brought on by four or five beers imbibed during a mid-evening tavern stop. Any person arrested for drunken driving could plead that he had been taking a prescribed non-narcotic drug which induced drowsiness and slowed down his nervous reflexes. The logical end of defendant's reasoning would be that where a driver takes medication together with intoxicating beverages, he can never be deemed to have violated R.S. 39:4-50, though he be so drunk as to be in a complete stupor.
The opening sentence of R.S. 39:4-50 reads:
"A person who operates a motor vehicle while under the influence of intoxicating liquor * * * shall be subject, for a first offense, to a fine of not less than two hundred nor more than five hundred dollars, or imprisonment for a term of not less than thirty days nor more than three months, or both, in the discretion of the magistrate, and shall forthwith forfeit his right to operate a motor vehicle over the highways of this state for a period of two years from the date of his conviction. For a subsequent violation, he shall be imprisoned for a term of three months and shall forfeit his right to thereafter operate a motor vehicle over the highways of this state."
Defendant would have the statute read: "A person who operates a motor vehicle while exclusively under the influence of intoxicating liquor * * *." The Legislature has not so phrased the provision. To interpret the existing statute as defendant does would be to render it nugatory in cases which are intended to be covered.
In State v. Rodgers, 91 N.J.L. 212, 215 (E. & A. 1917), Justice Trenchard said:
"The expression `under the influence of intoxicating liquor' covers not only all the well-known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors and which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess."
This interpretation of the statute has not been modified or revised in more than three decades.
It must be observed that we have only the defendant's testimony that he took a benadryl capsule at the time he drank the beer. The capsules had been prescribed in August, *26 two months earlier, in the hay fever season. There was no evidence that the prescription had ever been re-filled. The police physician found no visual symptoms of hay fever. He testified that a hay fever sufferer's eyes would react to light; defendant's stayed wide open and the pupils didn't flicker.
We have the further fact that defendant told the examining doctor that he had taken no medicine. The doctor found nothing in his examination leading him to the belief that defendant had been taking drugs. He testified that if he had known that defendant was taking benadryl, it would not have changed his conclusion. He stated that benadryl has no effect on one's tolerance for alcohol; drowsiness is its main effect. It is to be noted that defendant's conduct at the time of arrest reflected the opposite of drowsiness; he was "arrogant" and "belligerent."
Defendant's own physician was not prepared to say that taking benadryl on an empty stomach, followed by the drinking of beer, would exaggerate the intoxicating effect of alcohol. One must therefore conclude that the benadryl, if it was in fact taken, contributed nothing to defendant's intoxicated condition.
Defendant also argues that his conduct was "involuntary" because of the alleged side-effects of the benadryl. The contention has no greater merit than the defense advanced in State v. Gooze, 14 N.J. Super. 277 (App. Div. 1951).
In Kessler v. State, 136 Tex. Cr. R. 340, 125 S.W.2d 308 (Ct. Crim. App. 1938), the defendant was convicted for driving an automobile upon a public highway while intoxicated. On appeal she contended that the trial court erred in declining to give her specially requested instruction to the effect that if she was intoxicated from the combined use of amytal and whisky, the jury should acquit her. The appeal court held:
"We are of the opinion that she was not entitled to such an instruction. If she indulged in the use of amytal to such an extent that she thereby made herself more susceptible to the influence of intoxicating *27 liquor than she otherwise would have been and by reason thereof became intoxicated from the recent use of ardent spirits, she would be in the same position as though her intoxication was produced by the use of whisky alone. A person who gets himself in a condition whereby he may become intoxicated from a lesser quantity of whisky than it would ordinarily take to produce intoxication is nevertheless intoxicated from the use of whisky."
Defendant relies on State v. Matchok, 14 N.J. Super. 359 (App. Div. 1951), in contending that the State did not establish defendant's guilt beyond a reasonable doubt. That case is clearly distinguishable; there the defendant suffered head injuries in a collision, no tests of intoxication were made, and no one but the State's medical witness testified that defendant had an alcoholic breath. More in point, because they illustrate the quality of proof that will support a judgment of conviction, are State v. De Hart, 3 N.J. Misc. 71, 129 A. 427 (Comm. Pl. 1925); State v. Myers, 136 N.J.L. 288 (Sup. Ct. 1947) and State v. Wright, 137 N.J.L. 507 (Sup. Ct. 1948).
The burden of establishing defendant's guilt beyond a reasonable doubt was upon the State. We find that the evidence fully supports the result reached by the County Court. The issue presented to it was whether defendant had operated a motor vehicle while under the influence of intoxicating liquor. That issue was entirely factual and the County Court, on sufficient evidence, determined that he did. There is no justification for disturbing its finding. State v. Nolan, 1 N.J. Super. 280 (App. Div. 1949).
The judgment of conviction is affirmed.