Talley R. HOLMES, Jr., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 9433.

District of Columbia Court of Appeals.

Argued Nov. 19, 1975.

Decided March 26, 1976.

George H. Windsor, Washington, D. C., for appellant.

E. Calvin Golumbic, Assistant Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., when the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KELLY, FICKLING, and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant, the owner of an apartment house at 1929–18th Street, N.W., was convicted of multiple housing code violations involving the presence of impermissibly high concentrations of lead in the paint in one of his units. D.C. Housing Regulations, §§ 2104 and 2605.4 (as amended, April 12, 1973, Reg. No. 73-7). The existence of the prohibited conditions is not disputed. Appellant asserts (1) that a landlord may evict a tenant in lieu of abating the deficiency; (2) that a defense of lack of mens rea should be available to him; and (3) that the criminal prosecution in this case was unreasonable. We affirm.

Appellant's first contention is that a landlord may evict a tenant rather than make the repairs necessary to bring his property into compliance with the housing code. The tenant in the unit in question was given a 30-day notice to quit on the same day that the housing authorities served appellant with the deficiency notice listing the paint violations. We have held that in appropriate circumstances a lease for premises which do not satisfy the requirements of the housing code is unenforceable, and that the relationship between the landlord and tenant in such a case may be described as a tenancy at sufferance. *Diamond Housing Corporation v. Robinson,* D.C.App., 257 A.2d 492 (1969). Subsequent cases have indicated that a landlord may withdraw his units from the market where such action is based on purely economic considerations. *See, e. g., Robinson v. Diamond Housing Corporation,* 150 U.S.App.D.C. 17, 463 F.2d 853 (1972). However, the landlord's right to "abate by eviction" is not unfettered, and must be examined in light of the underlying policy of the housing code "to increase rather than decrease the stock of habitable housing in the District of Columbia." *Robinson v. Diamond Housing Corporation, supra* at 33, 463 F.2d at 869. The propriety of the withdrawal of noncomplying units would turn upon the difficult factual determination of whether the landlord was unable or merely unwilling to make the necessary repairs, and further would involve consideration of whether the eviction was based upon retaliatory motivations. *Ibid.*

On the facts of this case, however, such an inquiry would be misplaced. It is undisputed that despite the notice to quit, the tenancy in question continued uninterrupted for as long as five months after the initial citation for code violations. It therefore is unnecessary for us to determine whether appellant properly might have evicted his tenant in lieu of correcting the deficiencies. When the information was filed on December 5, 1974, more than four months after the original notice, he still had neither eliminated the violations nor terminated the tenancy. Thus, to whatever extent there may have existed an option to remove the unit from the market, the time for such had passed.

▰ Appellant asserts that his failure to pursue the alternative of eviction to its conclusion rested upon his concern for his tenant, who was pregnant and indicated that she could find no other place of residence. He argues that he thus lacked the necessary mens rea to be found guilty of the criminal offense. The record shows that the tenant had a three-year-old daughter, and that the apartment contained multiple violations for toxic lead paint, the potentially tragic effects of which upon young children have been well documented. To permit such a dangerous combination of circumstances to continue month after month is not wholly consistent with appellant's asserted altruism. More to the point, however, is the fact that as regulatory law, the housing code need not provide that offenses thereunder include an element of scienter.

Such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger. [*United States v. Dotterweich,* 320 U.S. 277, 281, 64 S.Ct. 134, 136, 88 L.Ed. 48, 51 (1943).]

See *Morissette v. United States,* 342 U.S. 246, 252–62, 72 S.Ct. 240, 96 L.Ed. 288, (1952) ; *Hutchison Brothers Excavation Co. v. District of Columbia,* D.C.App., 278 A.2d 318, 322 (1971). Where, as here, reasonable regulations establish public welfare offenses for the purpose of maintaining the health and safety of those ill-equipped to protect themselves, the defenses of good faith or lack of mens rea are unavailable. *See Hutchison Brothers Excavation Co. v. District of Columbia, supra. See also Davis v. District of Columbia,* D C.Mun.App., 59 A.2d 208 (1948).

▰ Finally, appellant suggests that the proceedings below were deficient in that they presented him with a constitutionally inadequate opportunity to contest the issues of the determination of toxicity, the required method of correcting the toxic conditions, and the reasonableness of the time allowed for the necessary repairs. Under the provisions of the housing code, appellant could have sought both a review of the determinations of the impermissible lead concentrations and a variance excusing compliance with the notice should the cost of the repairs or the brevity of the time provided therefor be shown to impose an "exceptional or undue hardship." D.C. Housing Regulations, §§ 2702, 2703. Appellant did not avail himself of either avenue of administrative relief. Furthermore, at trial he offered no evidence in contradiction of the inspectors' testimony regarding the toxic conditions, and little proof of the asserted burden of compliance. Under such circumstances, the claim of a lack of adequate opportunity for a full and fair hearing on these issues is without merit.

▰ The burden which appellant asserts as unreasonable was that of the removal or covering of lead paint in a single apartment unit, which ultimately was done by the government (and taxed to the landlord) at a cost of approximately $800. In a similar context we have said that a property owner cannot avoid compliance with the safety standards "merely because it is expensive or difficult." *Levengard v. District of Columbia,* D.C.App., 254 A.2d 728, 729 (1969). Nor does the alleged practice of the housing authorities normally to grant 30 days for the correction of similar deficiencies render the 10-day period of notice here unreasonable. While § 2701.4 of the housing code provides that a "reasonable" time shall be allowed, appellant in fact had considerably more than 30 days within which to make the necessary corrections. Given the relatively simple nature of the repairs required, and the fact that the prosecution was not initiated until more than four months after appellant was put on notice of the violations, it is manifest that the obligations placed upon appel-

lant were not so unreasonable as to require reversal. *See Levengard v. District of Columbia, supra.  See also Gay v. District of Columbia,* D.C.App., 202 A.2d 399 (1964) ; *Davis v. District of Columbia, supra.*

*Affirmed.*