**Gerald J. BODOH, Petitioner,**

v.

**DISTRICT OF COLUMBIA BUREAU OF MOTOR VEHICLE SERVICES, Respondent.**

**No. 11686.**

District of Columbia Court of Appeals.

Submitted June 29, 1977.

Decided Sept. 7, 1977.

---

Samuel Intrater and Albert Brick, Washington, D.C., were on the brief for petitioner.

John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, and Margaret L. Hines, Asst. Corp. Counsel, Washington, D.C., were on the brief for respondent.

Before GALLAGHER, HARRIS and MACK, Associate Judges.

HARRIS, Associate Judge:

This is a petition for review of an order suspending a motor vehicle operator's permit for (1) a refusal to submit to chemical testing for blood-alcohol content, *see* D.C.Code 1973, § 40–1005(a), and (2) driving while under the influence of intoxicating liquor. 32 D.C.R.R. § 2.305(a)(7).* Petitioner argues that the order of the Bureau of Motor Vehicle Services was adopted erroneously in that it was based upon a rejection of undisputed evidence that his poor driving was the effect of his taking medication in combination with the consumption of alcohol. We affirm.

At the hearing, a police officer testified that he had investigated an accident at about 4:00 p.m. on March 1, 1976. He found that petitioner had backed his automobile into a parked car several times. He took petitioner's car keys and began talking to witnesses. While the officer thus was investigating the case, petitioner used a second set of keys and drove off. The officer pursued him on a motor scooter and forced petitioner to drive over to the curb. Petitioner then pulled out, nearly striking the officer, and collided with a second car. When the officer thereupon arrested him, petitioner appeared to be in a daze, and he was rambling incoherently in a low voice. His clothes were disarranged; he was staggering; and he had a slight odor of alcohol. After advising petitioner of his rights [*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)], the officer asked if he had been drinking. The officer's recollection was that petitioner replied that he had drunk "a couple of beers" about one hour before the incident. The officer then informed petitioner that under the Implied Consent Act, D.C.Code 1973, §§ 40–1001 *et seq.*, he had a choice of chemical tests for blood-alcohol content and that his license would be suspended if he refused. Petitioner refused all tests.

Petitioner testified that he had drunk a vodka and Seven-Up at lunch and had consumed two other such drinks at different Georgetown bars during the afternoon. He recalled nothing from the time when he returned to his automobile after the last drink until he was in the police station. He further testified that he was taking Librium, a tranquilizer, on his doctor's prescription. Defense counsel introduced a statement by petitioner's physician that the consumption of a small amount of alcohol while using the drug could give the appearance of intoxication. Petitioner testified that never before had he become intoxicated after so few drinks, and he stated that his physician had not warned him of the danger of combined use. He further testified that although he had used the drug for eight years, he had never become intoxicated after taking it and consuming a small amount of alcohol.

\* \* \* \* \* \*

* That portion of the Motor Vehicle Regulations provides:

   (a) \* \* \* The Director is authorized, after giving notice and an opportunity for hearing, to suspend or revoke the license of any person upon a showing by his records or other sufficient evidence that such person—

(7) Has operated a motor vehicle while under the influence of intoxicating liquor or a drug, or while physically or mentally unqualified to operate a motor vehicle by reason of diabetic coma, or epileptic or other seizure;

The hearing officer found that petitioner had operated a motor vehicle while driving under the influence of alcohol, a drug, or a combination of both, and that he had refused a blood-alcohol content test. Based thereon, he suspended petitioner's license. After unsuccessfully exhausting his administrative remedies, petitioner brought his case to us. D.C.Code 1977 Supp., § 1–1510.

Several courts have affirmed criminal convictions for driving while intoxicated where the impairment resulted from both alcohol consumption and the use of a prescribed medication. *See, e. g., People v. Fair*, 254 Cal.App.2d 890, 62 Cal.Rptr. 632 (1967); *State v. Glynn*, 20 N.J.Super. 20, 89 A.2d 50 (App.Div.1952); *Commonwealth v. Rex*, 168 Pa.Super. 628, 82 A.2d 315 (1951). In contrast, *City of Minneapolis v. Altimus*, 306 Minn. 462, 238 N.W.2d 851, 857 (1976), allowed an accused to defend against such a charge on the ground that his intoxication resulted from the consumption of a prescribed drug the effect of which he was unaware, as long as the involuntary intoxication rendered him temporarily insane. In *People v. Van Tuyl*, 79 Misc.2d 262, 359 N.Y.S.2d 958 (App.Term 1974), the court reversed the conviction of a defendant who had used both medicine and alcohol, where uncontradicted expert testimony showed that the impaired driving ability resulted solely from the medicine.

Initially, however, this case is an appeal from an administrative proceeding rather than a criminal prosecution. Although the loss of a driver's license is a substantial deprivation, *see Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), it is far less severe than the imprisonment authorized upon criminal conviction for operating a motor vehicle "while under the influence of any intoxicating liquor or narcotic drug" in violation of D.C.Code 1973, § 40–609(b). *See Murray v. United States*, D.C.App., 358 A.2d 314 (1976) (six months maximum sentence for offense of driving under the influence of alcohol imposed consecutive to other homicide-related sentences). There are, moreover, differences of language between the provisions of § 40–609(b) and 32 D.C.R.R. § 2.305(a)(7). A more lenient interpretation for the criminal, as opposed to the regulatory, provision may be warranted, but resolution of that question must remain for another case.

Our interpretation of 32 D.C.R.R. § 2.305(a)(7) is guided both by the "important public interest in safety on the roads and highways and in the prompt removal of a safety hazard," *Dixon v. Love*, 431 U.S. 105, 114, 97 S.Ct. 1723, 1728, 52 L.Ed.2d 172 (1977), and by the regulation's broad reach to cover those who drive "while physically or mentally unqualified to operate a motor vehicle by reason of diabetic coma, or epileptic or other seizure." The emphasis is on physical conditions which render one a dangerous motorist, rather than on whether the condition resulted from matters within the driver's control. The public safety requires strict liability under the regulation now before us, and a motorist who consumes alcohol while using medication acts at his own peril. *See City of Waukesha v. Godfrey*, 41 Wis.2d 401, 164 N.W.2d 314, 316 (1969) (so stating in a criminal case). *Cf. Holmes v. District of Columbia*, D.C.App., 354 A.2d 858, 860 (1976). A driver is acting under the influence of alcohol even when its effect is combined with that of another cause. *City of Waukesha v. Godfrey, supra*, 164 N.W.2d at 317; *State v. Glynn, supra*, 89 A.2d at 52; *Commonwealth v. Rex, supra*, 82 A.2d at 317. There was substantial evidence to support the Bureau's action, and no legal error was committed. The order of suspension accordingly is affirmed. *See* D.C.Code 1977 Supp., § 1–1509(e); *Korotki v. Tofany*, 38 A.D.2d 738, 329 N.Y.S.2d 340 (1972).

*Affirmed.*