**Alfred L. BLACK, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 79–80.**

District of Columbia Court of Appeals.

Submitted Nov. 27, 1979.

Decided March 24, 1980.

Bernadette Gartrell, Washington, D. C., with whom John A. Shorter, Jr., Washington, D. C., was on the brief, for appellant.

Judith W. Rogers, Corp. Counsel, Washington, D. C., with whom Richard W. Barton, Deputy Corp. Counsel, Richard B. Nettler, and Mark S. Mann, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KELLY and HARRIS, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Appellant was found guilty, after trial by the court, of two violations of the District of Columbia Housing Regulations which insofar as here pertinent provide:

Sec. 2405—Utilities.

Where utilities such as water, electricity, gas or other fuels, . . . are the responsibility of or are under the control of the owner or licensee of any residential building, such utilities shall be furnished and maintained by such owner or licensee in the quantities needed for normal occupancy.[1]

He was sentenced to consecutive terms of 10 days in jail and a fine of $300.00 for each violation.[2] Execution of the sentences was then suspended and appellant was placed on unsupervised probation for one year, conditioned upon his compliance with the requirements of § 2405 quoted above.

On this appeal which followed, appellant claims that the evidence was insufficient to support the judgments of conviction. We do not agree and affirm.

---

1. D.C. Housing Regs., Art. 240, § 2405 (1956).

2. D.C. Housing Regs., Art. 210, § 2104 (1956).

The material facts are not in dispute. On November 21, 1978, and for some time prior thereto, appellant was the owner of certain occupied apartment buildings on Danbury Street, S.W., in the District of Columbia. Prior to November 21, 1978, appellant was notified by the Potomac Electric Power Company (PEPCO) that service of electricity to such apartment buildings would be terminated unless he paid within five working days an accumulation of delinquent electrical bills. PEPCO also notified the District of Columbia Department of Housing and Community Development of the proposed termination of electrical services. Notwithstanding, the delinquent electrical bills were not paid, and at or about 10:30 a. m. on November 21, 1978, electrical service to the apartments was terminated.

Shortly thereafter, a District of Columbia housing inspector was informed that the occupants of the dwelling units were without electrical service for heating, lighting and refrigeration. The inspector then served upon appellant citations requiring that he cause electrical service to be restored within four hours.[3] Appellant failed to comply with the order and the District of Columbia complained against him, by two informations, in the Criminal Division of the Superior Court.

Appellant moved to dismiss the informations, representing to the court that the amount of the delinquent bills was approximately $14,000, and urging that the time period allowed him for compliance was unreasonable within the purview of § 1301.4 of the Housing Regulations. After an extensive hearing the trial court denied the motion, saying that

the nature of [the] offense is an emergency itself, which, it seems to the court, justifies the briefness of the time within which [appellant was] given to comply . . . . . .

\* \* \* \* \* \*

This electric bill was fourteen thousand dollars, and I think . . . [appellant] is something more than six months behind. He's [appellant's] known, for a long time, that he was subject, at any moment, to having the electricity cut off by the electric company.

The case was then called for trial at which there was uncontroverted. testimony substantially as outlined above. In addition, there was testimony by an occupant of one of the dwelling units that on November 21, 1978, she was without electrical service for light, heat, or refrigeration from 10:30 a. m. to 4:30 p. m.[4] Received also as evidence were government exhibits consisting of copies of the two notices of violations served upon appellant and a copy of the deed to the properties involved, indicating that appellant was at that time the record owner.

At the conclusion of the government's case, appellant moved for a judgment of acquittal, urging again that the four-hour time period given him to bring the buildings into compliance with § 2405 of the Housing Regulations was unreasonable within the purview of subsection 1301.4 of such regulations. The motion was denied. Appellant then rested his case without offering any evidence in support of his position taken at the hearing on his motion for a judgment of acquittal.

\* \* \* \* \* \*

1301.4 Allow a reasonable time for the performance of any act such notice requires, and,

1301.5 Be served upon the person . . responsible for correcting the violation described in the notice. . . .

3. The pertinent sections of Art. 130, D.C. Housing Regs., provide:

Section 1301—Notice.

Whenever any duly designated agent of the District of Columbia determines that there are reasonable grounds to believe that there exists a violation of any provision of these regulations, he shall make a report to the director of the Department of Licenses and Inspections of the District of Columbia, who shall, in his discretion, give notice of such alleged violation to the person or persons responsible therefor, as hereinafter provided. Such notice shall:

4. The District of Columbia Department of Housing and Community Development arranged with PEPCO to have electrical service restored at or about 4:30 p. m. on that day by committing itself to pay the estimated cost of future services for two weeks.

The trial court found that the four-hour period allowed appellant to obtain the restoration of electrical service was, under the circumstances, reasonable. Thus, the trial court concluded that the government had proven all elements of the offenses charged, and appellant was found guilty.

On this appeal, we are obliged to view the evidence in the light most favorable to the government, and to affirm if that evidence is sufficient to support findings of guilt. *See, e. g., Stewart v. United States,* D.C.App., 383 A.2d 330, 331 (1978); *Franey v. United States,* D.C.App., 382 A.2d 1019, 1022 (1978); *Fleming v. United States,* D.C.App., 310 A.2d 214, 218 (1973); *Crawford v. United States,* 126 U.S.App. D.C. 156, 158, 375 F.2d 332, 334 (1967).

We are unable to say that the evidence is insufficient to support the findings of guilt. The record reflects uncontroverted evidence in the form of witness testimony and documentary evidence in support of the court's findings that appellant was guilty of the violations charged. Appellant presented no evidence whatsoever in support of his claim that the four-hour period was under the circumstances unreasonable.

The record reflects also that in reality appellant had well over four hours within which to deal with the problem at the apartment houses. He was fully informed of his delinquency in the payment of electrical bills and had been repeatedly threatened by PEPCO with a discontinuance of services. *See Holmes v. District of Columbia,* D.C.App., 354 A.2d 858, 860–61 (1976). In our view, the "reasonable time" limitation was principally intended to protect a landlord against delays by third parties in making repairs or correcting deficiencies—persons over whom a landlord often has no direct control.

Moreover, the testimony of the housing official was that he had considered several factors in making his determination that the four-hour period allowed for compliance was reasonable. The controlling considerations, he said, were that no major repairs were required, the weather was cold, and the health and welfare of the tenants (especially that of their children) was crucial. In sum, all that was required of appellant to achieve compliance was payment of the long-delinquent electrical bills or an arrangement satisfactory to PEPCO for future payment.

We recognize the burden that escalating utility costs impose upon landlords, but "one who chooses to use his property as a dwelling place for others to produce profit for himself" cannot by pleading impecunious circumstances avoid compliance with § 2405, which requires him to furnish electricity in the amounts needed for normal occupancy. Put another way, appellant's ownership of the buildings carried with it a responsibility to have a commensurate capacity to maintain them in compliance with the housing regulations. *See Levengard v. District of Columbia,* D.C.App., 254 A.2d 728, 729 (1969). Finding no error requiring reversal, the judgments of conviction are

*Affirmed.*