(724 P.2d 699)

No. 58,713

CITY OF WICHITA, *Appellee,* v. DARRELL D. HULL, *Appellant.*

Opinion filed September 11, 1986.

*Richard L. Hines* and *Daniel Dale Creitz,* of Hines & Ahlquist, P.A., of Erie, for the appellant.

*Janell R. Jenkins,* assistant city attorney, for the appellee.

Before REES, P.J., PARKS and BRISCOE, JJ.

BRISCOE, J.: This is a direct appeal by the defendant, Darrell D. Hull, from his conviction of driving while under the influence of drugs in violation of Wichita City Ordinance § 11.38.150(b). Defendant specifically raises two issues and discusses a third: (1) Whether intent is a necessary element of driving while under the influence of drugs or alcohol; (2) whether he can be convicted of driving while under the influence when his conduct was involuntary; and (3) whether there was sufficient evidence to support defendant's conviction where no expert testimony was introduced to show defendant's taking a sleeping pill resulted in his intoxication. We affirm.

At trial, defendant testified that he left work at approximately 6:45 p.m. on September 27, 1984. He stated he was ill that day and was taking medicine as prescribed by his physician. According to defendant, he took a sleeping pill along with an antibiotic just prior to leaving work. There was no warning label on the medicine bottle to indicate it was unsafe to drive after taking the sleeping pill. Defendant testified his physician never warned him about driving while using the medication. Defendant stated he was not aware that one pill he had taken was a sleeping pill, although the label on the medicine bottle in-

structed defendant to take one a day in the early evening for insomnia.

Defendant testified he became sleepy as he drove and he rolled down the car window, shook his head, and probably played the radio. He testified he had taken the same medication and driven on prior occasions without incident. At the intersection of Lincoln and Oliver, defendant's vehicle rear-ended a vehicle driven by Nora Grissom. Neither vehicle was damaged nor was either driver injured.

Grissom testified she first noticed defendant's car a couple of blocks north of the intersection of Oliver and Kellogg. Defendant's car was two car lengths behind her car. According to Grissom, defendant was speeding up and slowing down, and weaving in and out of the southbound lane. As her vehicle approached the intersection, she was afraid defendant would not stop before his vehicle collided with hers. The light changed to green, however, and Grissom and defendant proceeded. When Grissom reached the intersection of Oliver and Lincoln, the traffic signal was red. Her car was stopped behind four other cars when defendant's car collided with hers. Grissom testified she got out of her car and approached defendant, who remained in his vehicle. She indicated defendant did not respond to her questions and his eyes did not seem to be focusing. Grissom then walked to an adjacent convenience store and called the police. The police arrived and Grissom reported her version of the accident.

Officer Susan Brewer testified that as she arrived on the scene the police dispatcher was broadcasting a report of a drunk driver in a light blue car bearing a Norton County "H" tag. The license plate on defendant's blue car was Norton County "H." While Officer Brewer listened to her radio, defendant stepped from his vehicle and stumbled and staggered into the northbound lane of traffic. Several northbound vehicles had to brake to avoid him. Officer Brewer removed defendant from danger and then spoke with Grissom. After hearing Grissom's version of the accident, Officer Brewer permitted her to leave. The officer then questioned defendant about the accident. At that time, defendant told Officer Brewer he had taken a sleeping pill. Defendant told the officer the medicine bottles were in his car. Officer Brewer examined four separate medications and asked defendant to indicate what he had taken. Defendant indicated he had taken

one pill called Chloromycitin, an antibiotic, and one pill labeled Halcion, a sleeping pill.

Officer Brewer advised defendant of his rights. She then asked him when he had taken the sleeping pill and he informed her that he took it at 6:45 p.m. Officer Brewer then asked defendant to perform some field sobriety tests. Two balance tests were administered and Officer Brewer testified that defendant failed both. The officer then arrested defendant and he was taken to the police station where defendant consented to a blood alcohol test. The test showed no trace of alcohol. No further testing was requested or performed.

The ordinance under which defendant was convicted, Wichita City Ordinance § 11.38.140(b), provided:

"No person shall operate any vehicle within the city if the person is a habitual user of or under the influence of any narcotic, hypnotic, somnifacient or stimulating drug or is under the influence of any other drug to a degree which renders such person incapable of safely driving a vehicle. The fact that any person charged with a violation of this subsection is or has been entitled to use the drug under the laws of the State of Kansas shall not constitute a defense against any charge of violating this subsection."

The language of this ordinance is taken from the 1984 version of K.S.A. 8-1567 which permitted cities to enforce the prohibition against drunk driving by substituting a city ordinance for the statute. Accordingly, we look to the legislative intent behind K.S.A. 1984 Supp. 8-1567 in order to interpret this Wichita city ordinance. We note for historic purposes only that both the statute and the ordinance have been amended subsequent to defendant's conviction.

On appeal, defendant maintains that his conviction for driving under the influence of drugs was improper because the city was not required to prove intent. The city, on the other hand, argues that defendant's conviction was proper because the ordinance prohibiting driving under the influence is a *malum prohibitum*, or absolute liability offense. An absolute liability offense, unlike most other crimes, does not require any criminal intent. The only proof required to convict an individual of an absolute liability offense is that the individual engaged in the prohibited conduct. According to the Kansas Supreme Court:

"The legislature may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and where the legislative intention appears, it is incumbent upon the courts to give it effect, although the

intent of the doer may have been innocent. The doing of an inhibited act constitutes the crime, and the moral turpitude or purity of motive by which it is prompted, and knowledge or ignorance of its criminal character, are immaterial circumstances on the question of guilt." *State v. Merrifield*, 180 Kan. 267, 269, 303 P.2d 155 (1956).

See *State v. Cruitt*, 200 Kan. 372, 375, 436 P.2d 870 (1968). The constitutionality of absolute liability offenses has been upheld by the United States Supreme Court. *Morissette v. United States*, 342 U.S. 246, 96 L. Ed. 2d 288, 72 S. Ct. 240 (1956).

In order to determine whether driving while under the influence is an absolute liability offense in Kansas, the city directs the court's attention to K.S.A. 21-3204, which reads:

"A person may be guilty of an offense without having criminal intent if the crime is a misdemeanor and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."

The difficulty in the present case results from the fact that neither K.S.A. 1984 Supp. 8-1567 nor Wichita City Ordinance § 11.38.150 expressly indicates that driving while under the influence, a traffic offense, is an absolute liability offense. The city maintains that by omitting any reference to intent in its definition there is a clear indication that driving while under the influence is an absolute liability offense. This argument is bolstered by the fact this court has, on prior occasions, based a determination of absolute liability on the legislature's omission of intent as an element of the proscribed conduct. *City of Overland Park v. Estell*, 8 Kan. App. 2d 182, 187, 653 P.2d 819 (1982), *rev. denied* 232 Kan. 875 (1983); *State v. Baker*, 1 Kan. App. 2d 568, 571 P.2d 65 (1977). In these cases, this court determined that speeding and leaving the scene of an accident were absolute liability offenses. According to the city's argument in the present case, the omission of intent language in K.S.A. 1984 Supp. 8-1567 when coupled with the change in the public's attitude in the early 1980's toward driving while under the influence provides an adequate basis for concluding that driving while under the influence was intended by the legislature to be an absolute liability offense. See Gottlieb and Zinn, *An Analysis of Recent Changes in Kansas Drunk Driving Laws*, 3 Kan. Crim. Proc. Rev. 59 (1986), regarding public concern and legislative intent.

The city's argument is also supported by decisions from other jurisdictions. The majority of jurisdictions addressing this issue

has concluded that driving while under the influence is an absolute liability offense. *State v. Williams,* 144 Ariz. 487, 698 P.2d 732 (1985); *People v. Rostad,* 669 P.2d 126 (Colo. 1983); *Bodoh v. District of Columbia Bur. of Motor,* 377 A.2d 1135 (D.C. 1977); *State v. Goding,* 126 N.H. 50, 489 A.2d 579 (1985); *State v. Pistole,* 16 Ohio App. 3d 386, 476 N.E.2d 365 (1984); *State v. Maguire,* 78 Or. App. 459, 717 P.2d 226 (1986). Courts in these jurisdictions have relied on the same analysis advanced by the city in the present case. Massachusetts, on the other hand, has concluded that driving while under the influence is not an absolute liability offense. According to the Appeals Court of Massachusetts, courts should be reluctant to impose absolute liability on offenses involving severe penalties where there is no express legislative indication to do so. *Commonwealth v. Wallace,* 14 Mass. App. 358, 439 N.E.2d 848 (1982).

We conclude by its omission of intent as an element in K.S.A. 1984 Supp. 8-1567 our legislature intended driving while under the influence to be an absolute liability offense. Therefore, we reject defendant's complaints that the city failed to prove intent. Although defendant also asserted in his brief that the trial court erred in failing to instruct the jury on intent, defendant's counsel specifically stated at oral argument that this was not an issue on appeal.

Defendant next contends that he cannot be convicted of driving while under the influence when his conduct was involuntary. According to defendant, the purpose of drunk driving legislation has been to punish voluntary intoxication, and since he acted involuntarily he should not be punished. Defendant's argument is without merit because defendant was not involuntarily intoxicated.

First, under Kansas law involuntary intoxication must result from an irresistible force. *State v. Seely,* 212 Kan. 195, 202, 510 P.2d 115 (1973). An irresistible force "means that intoxicants or drugs were forcibly, unwittingly or unknowingly ingested by or administered to the defendant." *State v. Palacio,* 221 Kan. 394, 396, 559 P.2d 804 (1977). In the present case defendant contends he was involuntarily intoxicated because: (1) there was no warning label on the prescription bottle which warned against operating a motor vehicle after taking the drug for insomnia; (2) the physician prescribing the medication did not warn him

against driving; and (3) he had driven after taking the medication on prior occasions without incident. These facts, however, are insufficient to establish an involuntary intoxication defense where the evidence showed defendant was aware that the medication he was taking was for insomnia. A reasonable person aware of this fact should realize the inherent danger of driving while under the influence of a drug prescribed for this purpose. In addition, defendant failed to pull over and stop his vehicle even after he became drowsy. Instead, defendant rolled down his car window, shook his head in order to stay awake, and continued to drive. These facts demonstrate defendant voluntarily drove while intoxicated.

As a practical matter, the broadening of the concept of involuntary intoxication to cover the facts presented in this case would seriously compromise the viability of our drunk driving statutes. It is unlikely that most individuals convicted of driving while under the influence consciously decide to drive while intoxicated. More likely, such individuals voluntarily drink, fail to appreciate their level of intoxication, and then voluntarily drive. These individuals, like defendant, could argue that they should not be punished because their conduct was involuntary since they were unaware of their intoxication.

As his final issue, defendant contends there was insufficient evidence to support his conviction because expert testimony was not introduced to show his taking a sleeping pill resulted in intoxication. When considering the sufficiency of evidence to sustain a conviction, an appellate court will consider only that evidence in favor of the verdict. As long as the essential elements of the charge are supported by substantial competent evidence, the conviction will stand. Substantial competent evidence is defined as that evidence sufficient to convince a rational person of guilt beyond a reasonable doubt. *State v. Pham*, 234 Kan. 649, 667-68, 675 P.2d 848 (1984).

In order to convict defendant, the city was required to prove defendant drove while under the influence of any drug to the extent that he was unable to drive safely. PIK Crim. 2d 70.01; *State v. Reeves*, 233 Kan. 702, 644 P.2d 862 (1983). Defendant maintains that the city was unable to prove this element without expert testimony concerning the effects of the prescription drugs in question. This issue is without merit.

The charge of driving while under the influence of alcohol may be proven by circumstantial evidence. *State v. Fish,* 228 Kan. 204, 210, 612 P.2d 180 (1980). The circumstantial evidence in the present case is more than sufficient to support the conviction. Defendant himself testified he took a sleeping pill before driving home and then became sleepy. Nora Grissom testified that defendant drove erratically and eventually rear-ended her car. The police officers involved testified defendant failed the coordination tests. This evidence taken together was sufficient to lead any reasonable person to conclude that defendant's taking a sleeping pill resulted in intoxication which impaired his ability to drive.

Affirmed.