## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0469-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

THOMAS L. PARKER,

    Defendant-Appellant.

_____

> Argued April 22, 2026 – Decided June 26, 2026
>
> Before Judges Mayer, Vanek, and Jacobs.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Municipal Appeal No. MA-2024-008.
>
> John Menzel argued the cause for appellant.
>
> Stephen A. Pogany, Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Essex County Prosecutor, attorney; Stephen A. Pogany, on the brief).

PER CURIAM

Defendant Thomas L. Parker appeals from convictions in municipal court and the Law Division for driving while intoxicated (DWI) and associated motor vehicle offenses. We affirm.

I.

We summarize the facts and procedural history in the record. On August 13, 2023, at approximately 11:00 a.m., State Trooper Russell C. Johnson was traveling southbound on the Garden State Parkway in his patrol car. As he exited the Essex County toll plaza, the trooper observed defendant's vehicle straddling the lane markings before abruptly crossing multiple lanes—from the far-left lane to the far-right lane—in a single maneuver without signaling. Trooper Johnson observed numerous other vehicles in the immediate presence of defendant's vehicle as it crossed lanes, including SUVs, camper trailers, and pick-up trucks.

Believing he had witnessed a motor vehicle offense, Trooper Johnson activated his overhead lights and guided defendant from the Parkway onto a side street. As he drove behind defendant's vehicle, the trooper noticed defendant pull over at the end of the exit ramp "unnecessarily close to and appear[ing] to abrade the curb." As he approached the vehicle and spoke with defendant, he noticed defendant's speech was "slow and slurred." He also noted defendant's "emotionless and aimless stare" and overall demeanor, which he described as

A-0469-24

appearing not "all there." He assessed defendant's behavior as "exhibit[ing] signs of impairment (possibly [due to] drug and alcohol use)."

Based on these observations, Trooper Johnson asked defendant whether he had been drinking or had taken any drugs. Defendant responded he had taken prescribed medications, Propranolol and Prozac,[1] before operating his vehicle. The trooper conducted three standardized field sobriety tests (SFST): the Horizontal Gaze Nystagmus (HGN) test; the walk-and-turn test, and the one-leg stand test.

In his trial testimony, Trooper Johnson stated defendant failed the HGN test, getting "[six] out of [six] hits," meaning "a lack of smooth pursuit, distinct and sustained nystagmus and onset of nystagmus prior to [forty-five] degrees . . . in both eyes." He then administered the walk-and-turn test but defendant "was unable to perform it in a satisfactory manner." According to the trooper, "you [could] just tell . . . he was impaired" because his steps were not heel-to-toe and "[h]e had difficulty maintaining his balance." Defendant also failed the one-leg stand test—even after being afforded multiple opportunities to perform—for improper counting, putting his foot down, and being unable to

_____

[1] Prozac is also known by the generic name Fluoxetine.

A-0469-24

stand straight while performing the test. After failing the field sobriety tests, Trooper Johnson arrested defendant.

A search of defendant's vehicle incident to arrest produced an open container of beer in the center console cupholder. Police then transported defendant to the State Police barracks, where they administered an Alcotest which returned a 0.00% blood alcohol content (BAC). Trooper Johnson requested a urine sample, but defendant refused. The trooper did not call a drug recognition expert (DRE), explaining at trial "[i]t would have been a waste of time" because, in his experience, a DRE would also have requested a urine sample, which defendant had already refused.

Trooper Johnson charged defendant with the following motor vehicle offenses: DWI, N.J.S.A. 39:4-50; reckless driving, N.J.S.A. 39:4-96; failure to maintain lane/unsafe lane change, N.J.S.A. 39:4-88; possession of an open container of alcohol, N.J.S.A. 39:4-51b; and consuming alcohol in a motor vehicle, N.J.S.A. 39:4-51a.

Judge Vincent A. Pirone presided over the trial in Bloomfield Municipal court. Defendant and Trooper Johnson testified. Defendant testified that on Saturday, August 12, 2023, he and a friend went to a nightclub in Brooklyn. Between 10:30 p.m. and midnight, he drank three beers. At 5:00 a.m. the next

A-0469-24

morning, he drove to Central Park, where he ingested Fluoxetine and Propranolol. At approximately 10:00 a.m. Sunday morning, he drove to New Jersey, where the traffic stop occurred. He explained his poor performance on the SFSTs was due to exhaustion, nervousness, and distraction, attributing his slurred speech to a previous medical procedure.

The judge found Trooper Johnson to be a credible witness and defendant's testimony "incredibly inconsistent." The judge rejected defendant's proffer as to the reasons for his failed performance on the SFSTs. He found the evidence at trial demonstrated defendant "was driving under the influence of some admitted combination of alcohol and drugs, notwithstanding his BAC." The judge then entered a guilty verdict for DWI, reckless driving, unsafe lane change, and open container, acquitting defendant of consuming alcohol in a motor vehicle. He imposed mandatory minimum penalties, including fines, a three-month license suspension, and required installation of an ignition interlock device.

Defendant appealed to the Law Division. On de novo review, Judge Arthur J. Batista entered a September 6, 2024 order finding defendant guilty of DWI, reckless driving, failure to maintain lane/unsafe lane change, and possessing an open container of alcohol in his motor vehicle. In a forty-three-

page opinion accompanying the order, Judge Batista made detailed findings, starting with a determination that defendant's testimony lacked credibility.

> This court gives due deference in this case to the opportunity of the municipal court judge to assess the credibility of the testifying [defendant] and rejects [defendant]'s request that this court disregard same. His testimony reads as implausibly as it must have sounded at trial. The peculiarity of [defendant]'s appearance and demeanor captured in the video evidence pales in comparison to the outlandishness of his trial testimony. . . . [Defendant]'s testimony makes no sense to this court. It reads as if an excerpt from a Kerouacian carousal. As a result, this court gives due deference to the municipal court judge's ability to assess the credibility of the testifying [defendant], and places little to no weight and reliability in his testimony, including his unconvincing explanations for his manner of speech and poor performance on the SFST.

The judge applied the law to the facts as follows:

> Turning to N.J.R.E. 701, Trooper Johnson as a lay witness, like other arresting officers in [driving under the influence of drugs] DUID cases, was well within the bounds of offering his opinions. Those opinions were rationally based on his perception and assisted in determining facts related to the [defendant]'s condition and the scene. It is not beyond the ken of an average juror, or trier of fact, to draw an inference between [defendant]'s admission to ingesting Prozac, [P]ropranolol and alcohol and reviewing evidence regarding [defendant]'s demeanor and performance in SFST in order to determine whether the State has met its burden of proof beyond a reasonable doubt.

6

A-0469-24

He found the State proved defendant guilty of DWI beyond a reasonable doubt:

> Upon review of the trial transcript, documentary exhibits, video evidence, appeal submissions of counsel and oral argument, and for all the reasons noted herein, this [c]ourt finds that the State has proved beyond a reasonable doubt that on August 13, 2023, [defendant] operated his vehicle in violation of N.J.S.A. 39:4-50 based upon observation. The evidence relied upon in rendering this finding includes: (1) [defendant]'s own admissions to drinking alcohol (acknowledging his BAC was 0% at the time tested) and his need to "sober up" between 1:00 a.m. and 5:00 a.m.; (2) combined with his admission to taking alleged prescription medication (Prozac and [P]ropranolol[)] at 5:00 a.m. on the morning of the motor vehicle stop; and (3) the admitted erratic operation of his vehicle in crossing over multiple lanes of traffic, then veering back to the left, without signaling, failing to maintain his lane and hovering between two marked lanes while travelling on the Garden State Parkway; and (4) the open container of alcohol found in this vehicle; (5) Trooper Johnson's observations, corroborated by the video evidence, of [defendant]'s swaying, staggering, slurred speech, flushed face and watery eyes; (6) his odd demeanor and sluggishness; (7) his difficulty in standing and walking; (8) his wholesale abysmal performance on the standard field sobriety tests; and (9) the municipal court judge's credibility findings. The video evidence introduced in the trial court provides an unambiguous depiction of [defendant]'s intoxicated condition at the scene of the motor vehicle stop. The aggregate of those proofs is more than sufficient to permit this fact-finder to conclude, beyond a reasonable doubt, that [defendant] violated the DWI statute.

On the reckless driving charge, he found:

> The manner in which [defendant] operated his vehicle on the public highway, with numerous other vehicles around, was heedless and in willful or wanton disregard of the rights or safety of others. Coupled with his operation under the influence, [defendant] unquestionably placed Trooper Johnson and the dozens of other citizens using the roadway at the time in real danger of injury to persons, or their property. Upon review of the trial transcript, documentary exhibits, video evidence, appeal submissions of counsel and oral argument, this [c]ourt finds that the State has proved beyond a reasonable doubt that on August 13, 2023, [defendant] drove his vehicle recklessly in violation of N.J.S.A. 39:4-96.

Judge Batista imposed a sentence mirroring that issued by the municipal court judge. Defendant appeals, raising the following arguments:

POINT I

THE ABSENCE OF OBJECTIVE EVIDENCE ESTABLISHING A CAUSE OF DRUG OR ALCOHOL IMPAIRMENT WARRANTS DEFENDANT'S ACQUITTAL FOR DWI AS A MATTER OF LAW.

POINT II

VIDEO EVIDENCE DEMONSTRATES THAT THE FACT FINDINGS BELOW THAT DEFENDANT WAS UNDER THE INFLUENCE OF ALCOHOL OR DRUGS BEYOND A REASONABLE DOUBT ARE SO WIDE OF THE MARK AS TO WARRANT REVERSAL.

A-0469-24

POINT III

THE TRIAL JUDGE'S RELIANCE ON HGN TESTIMONY WAS PLAIN ERROR WARRANTING REVERSAL AND REMAND FOR A NEW TRIAL.

POINT IV

THE PROOFS FAIL TO ESTABLISH THE WILLFULNESS NECESSARY TO SUSTAIN A CONVICTION FOR RECKLESS DRIVING.

II.

On appeal from the Law Division's decision, our review "focuses on whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (quoting State v. Johnson, 42 N.J. 146, 157 (1964)). We apply what is known as the "two-court rule" of appellate review for a Law Division ruling that affirms, de novo, a municipal court's decision. State v. Locurto, 157 N.J. 463, 474 (1999). Under that rule, "appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)). We conclude no such "very obvious and exceptional showing of error" is presented here.

A-0469-24

DWI Conviction

In cases involving substances other than alcohol, in addition to proving defendant "operat[ed] a motor vehicle," the State must establish "(1) the defendant was intoxicated and (2) the cause of the intoxication was either narcotics, hallucinogens, or habit-producing drugs." State v. Olenowski, 255 N.J. 529, 550 (2023). In such cases, the facts and proofs of cause of the intoxication must be interconnected. Id. at 549. Examples include "proofs of . . . 'slurred and slowed speech,' 'bloodshot and glassy' eyes, 'droopy eyelids,' . . . 'fumbl[ing],' . . . and an 'emotionless stare.'" Ibid. (quoting State v. Bealor, 187 N.J. 574, 577 (2006)). This "may be linked with physical evidence of an intoxicating drug . . . in the driver's control, and 'the presence of [an intoxicating drug] in [the] blood stream at the time of the arrest and its likely source.'" Id. at 549-50 (quoting Bealor, 187 N.J. at 589-90).

Additionally, the consumption of even a small amount of alcohol can nonetheless result in a DWI conviction if there are "contributing factors" such as "medication or physical or nervous conditions rendering defendant more susceptible to alcohol." State v. Corrado, 184 N.J. Super. 561, 567 (1982) (citing State v. Tamburro, 68 N.J. 414, 422 (1975); State v. Glynn, 20 N.J. Super. 20, 24-25 (App. Div. 1952)).

"[A]lthough evidentially competent lay observations of the fact of intoxication are always admissible, lay opinion in respect of the cause of intoxication other than from alcohol consumption is not admissible. . . ." Bealor, 187 N.J. at 577. However, "competent lay observations of the fact of intoxication, coupled with additional independent proofs tending to demonstrate defendant's consumption of narcotic, hallucinogenic or habit-producing drugs as of the time of the defendant's arrest, constitute proofs sufficient to . . . sustain a conviction under N.J.S.A. 39:4-50." Ibid.

Defendant argues the 0.00% BAC test result "established [defendant's] innocence" and Trooper Johnson, who did not testify as a DRE, was not competent to give an opinion that defendant was DUID. Moreover, he asserts Judge Batista's findings were "unsupported by any objective toxicological evidence." He contends although the trooper's decision to arrest defendant was based on defendant's driving, speech, overall demeanor, and SFST performance, testimonial and video evidence "establishes [defendant]'s sobriety." Lastly, defendant maintains Judge Batista's consideration of the failed HGN test was error.

We disagree. After review of the record, we are satisfied there was sufficient reliable evidence, including the trooper's observations, defendant's

A-0469-24

admissions, and video evidence, to support the Law Division's de novo finding of defendant's guilt beyond a reasonable doubt. The absence of toxicology and the zero percent BAC reading are not fatal where admissions and corroborating evidence exist. See Bealor, 187 N.J. at 577. We recognize defendant is correct in stating it would be error to rely exclusively on the HGN testimony. However, the Law Division's findings were based on the totality of the evidence, which included the three failed SFSTs and the video recording.

Reckless Driving Conviction

"Reckless driving" is "driv[ing] a vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger or be likely to endanger, a person or property. . . ." N.J.S.A. 39:4-96; see State v. Francis, 67 N.J. Super. 377, 382 (App. Div. 1961); State v. Moran, 202 N.J. 311, 323 (2010) (holding in reckless-driving statute, term "willful" bespeaks deliberate or intentional disregard of lives or property of others).

Defendant claims the video does not show evidence of "willfulness" as statutorily required but merely shows his vehicle maneuvering in a manner colloquially known as the "Jersey slide," or "changing lanes . . . from the left lane across the center lane and into the right lane." We disagree.

The video evidence in the record, which we have carefully reviewed, supports the Law Division's finding that:

> [o]nce in the exit lane, [defendant]'s vehicle . . . fails to maintain its lane and drifts back to the left into the second lane (without signaling), straddling the hashed line between the exit lane and the adjacent lane of thru traffic on the four-lane stretch of the parkway. . . . [W]hat is unequivocally observable in the dash camera footage [is that] the offense occurred . . . in a densely populated area, on a heavily travelled roadway. The video captures dozens of vehicles travelling on the roadway, including cars, SUVs and three camper trailers attached to pick-up trucks in front of, behind and beside [defendant]'s vehicle.

This evidence, together with all other materials considered in our de novo review of the record, satisfies us there was sufficient credible evidence to support the guilty verdicts rendered by the municipal court and Law Division.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13