No. 48,304

STATE OF KANSAS, *Appellee*, v. ANTONIO H. PALACIO, *Appellant*.

(559 P. 2d 804)

Opinion filed January 22, 1977.

*Ray Hodge,* of Hodge, Wood and Wilson, of Wichita, argued the cause, and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, and *Christopher Randall,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Antonio H. Palacio appeals from a conviction of voluntary manslaughter in violation of K. S. A. 21-3403, and from the sentence of imprisonment for not less than five nor more than twenty years which was imposed upon him pursuant to K. S. A. 21-4501 (c).

The defendant raises but one issue on appeal. He contends that the trial court should have instructed the jury on involuntary intoxication, pursuant to K. S. A. 21-3208 (1).

Palacio lived with Hazel Lawson for about three years. He warned her about seeing other men, and he threatened to kill her and any man she went out with. On the night of May 19, 1975, he went to various locations in Wichita, Kansas, looking for Hazel Lawson. Her eleven-year-old son, Marty, accompanied him. The defendant had been drinking. After visiting several taverns, he proceeded to the home of Martha Duer. Marty remained outside while defendant entered the apartment. An argument ensued. Martha sustained cuts to her arms which later required 30 stitches. The defendant left her apartment hastily, carrying a butcher knife. He proceeded directly into the next door apartment of Robert W. Wolfenbarger (the deceased), whom defendant suspected Hazel had been seeing. He and Wolfenbarger argued and came out onto the porch, where they fought. Wolfenbarger pushed the defendant off of the porch and kicked at him; defendant then produced the

knife; Wolfenbarger jumped from the porch and attempted to escape; the defendant pursued him, caught him, and stabbed him with the butcher knife twelve times.

Palacio then ran some distance to the home of friends. He told them that he thought he'd just killed a man. There was blood all over his shirt and on the knife he carried in his hand. Accompanied by the friends, he returned to the place where Wolfenbarger lay. Police and an ambulance arrived shortly, and defendant was taken into custody. Wolfenbarger died as the result of a stab wound to the heart.

Two brothers of the defendant testified that he had been an alcoholic for over thirty years. They stated that he was drawn to alcohol like steel to a magnet; he was compelled by something like an irresistible force to drink. A physician who had treated the defendant, and who treats alcoholics regularly in his practice, testified that Palacio is a chronic alcoholic, is unable to control his impulse to drink, and is irresistibly compelled, once he starts, to drink until he is "bombed." One employer testified that Palacio's employment record indicated that he was terminated as "not dependable (alcoholic)." Another stated that most of the time Palacio worked, he did not appear to have been drinking. A third stated that during the majority of the time Palacio worked for him, he had not been drinking.

Defendant did not testify, but a tape recorded statement which he made on the date of the occurrence was introduced into evidence. Palacio there stated that he "had three or four bottles of vodka in a two-hour period" on the date of the occurrence. The arresting officer stated that Palacio was intoxicated.

The trial court gave instructions to the jury on voluntary intoxication pursuant to K. S. A. 21-3208 (2) and on intent, but refused to give an instruction on involuntary intoxication. In its oral ruling upon the request for such an instruction, the court said:

". . . After reading [*State v. Seely,* 212 Kan. 195, 510 P. 2d 115, and *Powell v. Texas,* 392 U. S. 514, 20 L. Ed. 2d 1254, 88 S. Ct. 2145] I . . . hold that [K. S. A.] 21-3208 was not an expression by the legislature of an intent to . . . carve a category of individuals who were immune to prosecution for their criminal conduct because of their addiction to any drug or narcotic including alcohol. . . .

. . . . . . . . . . . . .

"To be involuntarily intoxicated . . . a person must either have become intoxicated unknowingly either by accident or by the act of another

without the knowledge of the person who became intoxicated, or else must have had a sufficient mental defect or impairment that he or she, while becoming intoxicated, [was] not aware of the consequences of their actions in so doing. And it is the ruling of this Court that any person, including the chronic alcoholic who, as in the case before the Court at the present time, was shown to be sane and rational when sober, and who thereafter became intoxicated by consuming alcoholic beverages . . . is voluntarily intoxicated within the meaning of [K. S. A.] 21-3208 . . . rather than involuntarily intoxicated. And the Court is specifically rejecting the notion that an alcoholic may be under a sufficient desire for alcohol . . . that he will be compelled by that addiction to consume or absorb the same to the point of intoxication . . .

". . . [T]he evidence submitted to support the theory that the defendant was involuntarily intoxicated does not support such theory, but in fact shows that he was voluntarily intoxicated as this Court interprets [K. S. A.] 21-3208."

Defendant places primary reliance upon the case of *State v. Seely,* supra, wherein we said:

". . . [B]efore intoxication may be said to be 'involuntary' a defendant must show an irresistible force, which is something more than a strong urge or 'compulsion' to drink. . . ." (p. 202.)

Defendant contends that the evidence before the court established that he was a chronic alcoholic, that he was thus compelled by an "irresistible force" to partake of alcoholic beverages, that his intoxication was therefore involuntary, and that the court erred in failing to so instruct the jury. We disagree.

The "irresistible force" mentioned in *Seely* does not mean habit, desire, or any other type of *internal* compulsion. It means that intoxicants or drugs were forcibly, unwittingly or unknowingly ingested by or administered to the defendant. "Irresistible force" means physical compulsion by another, trickery, deception, or other type of *external* force. As a matter of law, the defendant, a chronic alcoholic but a person of average intelligence and mental capacity and whose actions were rational when he was sober, was not involuntarily intoxicated. The district court was correct in its interpretation of the law and in the instructions which it gave to the jury.

The judgment is affirmed.