454 A.2d 1121

COMMONWEALTH of Pennsylvania

v.

**Jeremiah RUMSEY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1980.

Filed Jan. 7, 1983.

Francis M. Walsh, Assistant Public Defender, Norristown, for appellant.

Joseph J. Hylan, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in upholding the constitutionality of section 308 of the Pennsylvania Crimes Code limiting the defense of intoxication in criminal proceedings. Finding the statute constitutional, we affirm.

Appellant, an inmate at Graterford prison, was arrested on November 15, 1978 for allegedly assaulting prison guards by swinging a sharpened scissors at them. He inflicted no injury. At trial, appellant attempted to introduce evidence that he had been drunk on bootleg wine and thus unable to form the requisite criminal intent for assault

by a prisoner, 18 Pa.C.S.A. § 2703 ("intentionally and knowingly"), or aggravated assault by attempt to inflict serious bodily injury, *id.* § 2702; 901 ("intentionally"). Relying upon section 308, the lower court refused the intoxication evidence, and found appellant guilty of aggravated assault, assault by a prisoner, recklessly endangering another person, and simple assault. It denied his post-trial motions, and imposed sentence, prompting this appeal.

■■■ Appellant contends that § 308 limiting the defensive use of voluntary intoxication evidence is unconstitutional. The statute provides:

Neither voluntary intoxication nor drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

Act of April 7, 1976, P.L. 72, No. 32, § 1, immediately effective; 18 Pa.C.S.A. § 308 (Supp.1974 to 1981). If read literally as an evidentiary rule merely precluding evidence of intoxication without redefining the *mens rea* element of crimes, this statute may be subject to attack as: (1) a legislative invasion of the Supreme Court's constitutional prerogative to make rules of evidence, Pa. Const. art. V, § 10(c); (2) barring the use of relevant evidence without sufficient justification, *see Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and (3) allowing convictions without proof of all elements of the crime beyond a reasonable doubt, *see Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441 (1959). These particular constitutional objections however, are not dispositive of the constitutionality of the statute. Legislative enactments are presumed valid, and will be stricken only if incapable of a constitutional construction. Appellant thus carries the heavy burden of demonstrating that the challenged statute

clearly, plainly, and palpably violates the United States or Pennsylvania constitutions. *Commonwealth v. Robinson,* 497 Pa. 49, 438 A.2d 964 (1981). Viewed in the light most favorable to constitutionality, it is apparent that in amended § 308 the legislature in effect redefined the *mens rea* element of intentional or knowing crimes to include those cases when the putative offender performed the criminal act but was unable to form the criminal intent otherwise required solely because he was voluntarily drunk or drugged. *See* Pa. Supreme Ct. Commission on Standard Jury Instructions, Draft Report at 2 (April 24, 1976) (suggesting this interpretation). *Cf. Commonwealth v. Pickett,* 244 Pa.Superior Ct. 433, 368 A.2d 799 (1976) (amended § 308 is not just a procedural rule because in effect it punishes acts that would not have been criminal under prior § 308 or would have been punishable only as lesser crimes). Redefinition of the kind and quality of mental activity that constitutes the *mens rea* element of crimes is a permissible part of the legislature's role in the "constantly shifting adjustment between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man." *Powell v. Texas,* 392 U.S. 514, 536, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254, 1269 (1968). In light of the history and nature of the voluntary intoxication defense and the purpose of a *mens rea* element in crimes, we are satisfied that the legislature has acted within permissible constitutional bounds in enacting amended § 308.

Although voluntary intoxication has never been a complete defense that would exonerate or excuse a crime, *e.g. Commonwealth v. Gordon,* 490 Pa. 234, 416 A.2d 87 (1980); *Commonwealth v. Ingram,* 440 Pa. 239, 270 A.2d 190 (1970); *see Commonwealth v. Bridge,* 495 Pa. 568, 435 A.2d 151 (1981) (collecting cases), it has often been recognized as so debilitating to an actor's mental processes as to undermine his ability to form certain types of *mens rea.* Thus, many jurisdictions, including Pennsylvania, permit the introduction of voluntary intoxication evidence to negate the

*mens rea* element of at least certain crimes. *See Commonwealth v. Bridge, supra* (citing 18 jurisdictions and earlier Pennsylvania cases).

Pennsylvania's response to the problem of the intoxicated offender and the defensive use of voluntary intoxication evidence has varied dramatically and unpredictably. Before 1971, several lower courts admitted intoxication evidence to negate the specific intent element of many crimes. *E.g., Commonwealth v. Bell,* 189 Pa.Superior Ct. 389, 150 A.2d 174 (1959) (burglary). In 1971, our Supreme Court declared voluntary intoxication evidence to be inadmissible to negate the *mens rea* element of any crime except premeditated murder. *Commonwealth v. Tarver,* 446 Pa. 233, 284 A.2d 759 (1971). The Court reversed itself in 1975, holding that, for pre-Crimes Code offenses, voluntary intoxication evidence could negate the *mens rea* element of any specific intent crime. *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975). Meanwhile, the legislature had enacted the Crimes Code, effective June 6, 1973. The first version of the Code adopted the position of the Model Penal Code drafters, that "evidence of intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to negative an element of the offense." Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, effective June 6, 1973; 18 Pa.C.S.A. § 308 (repealed). Our courts interpreted this section to allow the admission of voluntary intoxication evidence to negate the elements of "intentionally" or "knowingly," 18 Pa.C.S.A. § 302, for any Crimes Code offense. *E.g., Commonwealth v. Santiago,* 489 Pa. 527, 414 A.2d 1016 (1980) (to negate "intentionally" element of robbery); *Commonwealth v. Grassmyer,* 266 Pa.Superior Ct. 11, 402 A.2d 1052 (1979) (to negate "knowingly" element of endangering the welfare of children, but not to negate "recklessly" element of aggravated assault when injury actually inflicted). However, in 1976, the legislature enacted the amended version of § 308 declaring voluntary intoxication evidence legally irrelevant to the issue of intent, and admissible only when offered by the defendant and "rele-

vant to reduce murder from a higher degree to a lower degree of murder." Act of April 7, 1976, P.L. 72, No. 32, § 1, immediately effective; 18 Pa.C.S.A. § 308. Our courts promptly applied this statute. *E.g., Commonwealth v. McConnell*, 292 Pa.Superior Ct. 160, 436 A.2d 1201 (1981) (voluntary intoxication evidence may not be used to negate "intentionally" element of retail theft); *Commonwealth v. Boyd*, 271 Pa.Superior Ct. 88, 412 A.2d 588 (1979) (not to negate "intentionally" elements of robbery underlying second degree murder nor of conspiracy). *See Commonwealth v. Ruff*, 266 Pa.Superior Ct. 497, 405 A.2d 929 (1979) (may reduce murder from first to third degree, but may not negate "malice"—reckless disregard of human life—element of third degree murder).

Our courts' and legislature's varying approach to the defensive relevance of voluntary intoxication is not atypical. At common law, the problem of the intoxicated offender greatly influenced the development and definition of the *mens rea* elements of crimes. "The distinction between specific and general intent crimes evolved as a judicial response to the problem of the intoxicated offender," as courts attempted to reconcile the "conflicting feelings of sympathy and reprobation" for those who commit crimes while intoxicated. *People v. Hood*, 1 Cal.3d 444, 82 Cal. Rptr. 618, 462 P.2d 370 (1969) (TRAYNOR, C.J.). In addressing the relation of various *mens rea* elements to voluntary intoxication, the Model Penal Code drafters articulated the following justification:

[W]hen purpose or knowledge, as distinguished from recklessness, is made essential for conviction, the reason very likely is that in the absence of such states of mind [1] the conduct does not present a comparable danger, as in burglary or theft; or [2] that the actor is not deemed to present as significant a threat, as in treason and perhaps first degree murder; or, finally, [3] that the ends of legal policy are served by bringing to book or subjecting to graver sanctions those who consciously defy the legal norm.

Model Penal Code, Comments to § 2.08 at 7–8 (Tent. Draft No. 9, 1959). The drafters concluded that voluntary intoxication could negate these mental elements because they embodied "the basis of law's concern," and thus the reason for their non-existence should be "immaterial." *Id.* at 8.

█ The Pennsylvania legislature's departing from the drafters' conclusion is a policy judgment bearing a rational relation to demonstrated facts and permissible social goals. Although the Crimes Code, by establishing a range of related lesser crimes for most criminal acts, reduces the likelihood of unjustified complete acquittals for the voluntarily intoxicated offender—as feared by the court in *Commonwealth v. Tarver, supra* —the legislature could nonetheless reasonably decide that a return to the *Tarver* position of allowing voluntary intoxication only to reduce the degree of murder, *see Commonwealth v. Bridge, supra,* was an appropriate adjustment to the scheme of criminal liability in the Crimes Code. That amended section 308 adopts the *Tarver* position does not undermine its constitutionality because *Tarver* was overruled on non-constitutional grounds. *See Commonwealth v. Graves, supra* (overruling *Tarver* ). Although mere overindulgence or intoxication are not so morally reprehensible as consciously inflicting injury upon another, the legislature may emphasize concerns other than moral culpability in determining the elements of a crime. *Powell v. Texas, supra.* For instance, in upholding the constitutionality of strict liability crimes, the U.S. Supreme Court noted that the legislature may balance the hardship to offenders against that to victims, and impose responsibility upon those with a better opportunity to prevent the proscribed consequences. *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). That the hardship to victims is considerable is well-demonstrated. Drunk or otherwise intoxicated persons have been shown to commit nearly half the violent criminal acts that come to the attention of the police. More, *Legal Responsibility and Chronic Alcoholism,* 122 Am.J.Psych. 748, 753 (1966) (64% of felons arrested during study in Cleveland had urine alcohol level of 0.10 percent or higher; in 44% of

murders in Philadelphia during study both victim and offender had been drinking; many offenders were chronic alcoholics similar results in foreign studies). Voluntary intoxication is within the control of the actor, and thus, as our courts have often noted, it is a defense peculiarly subject to fabrication and false claims. *See Commonwealth v. Bridge, supra; Commonwealth v. Ingram, supra.* Unlike the defenses of insanity or diminished capacity, it does not result from a disease or defect of the mind, but rather from a state that is voluntarily self-induced, and thus curtailment of the defensive relevance of voluntary intoxication does not run afoul of the equal protection or cruel and unusual punishment clauses. *See Commonwealth v. Hicks*, 483 Pa. 305, 396 A.2d 1183 (1979).* *See generally, Commonwealth v. Weinstein*, 499 Pa. 106, 451 A.2d 1344 (1982); *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976). Although full exposure to criminal liability may seem unduly harsh to the inexperienced actor who cannot anticipate the effects of alcohol or drugs, and ignores the disparity between those who harbor criminal intent before becoming intoxicated and those who decide upon a criminal act only after falling into that state, such unfairness as exists may be mitigated through the court's discretion to impose less than the maximum sentence. *See Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977) (plurality opinion). In light of these circumstances, the legislature could reasonably conclude that the criminal law's goals of just retribution, deterrence, preventing recidivism, and rehabilitation would be better achieved by exposing voluntarily drunk or drugged offenders to more serious criminal liability through the redefinition of the *mens rea* element effected in amended § 308. Accordingly, we find 18 Pa.C.S.A. § 308 constitutional, and thus affirm the judgment of sentence.

Judgment of sentence affirmed.

---

* We need not reach the question of mental disease resulting from habitual long term abuse of drugs or alcohol. We are concerned here with an acute episode. *See Commonwealth v. Hicks*, 483 Pa. 305, 311 n. 5, 396 A.2d 1183, 1186 n. 5 (1979).