475 A.2d 103

**COMMONWEALTH of Pennsylvania**

v.

**David Lloyd KUHN, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1983.

Filed March 23, 1984.

Petition for Allowance of Appeal Denied Oct. 1, 1984.

74

John Woodcock, Jr., Public Defender, Hollidaysburg, for appellant.

Gary A. Caldwell, Assistant District Attorney, Altoona, for Commonwealth, appellee.

Before SPAETH, BROSKY and MONTEMURO, JJ.

BROSKY, Judge:

This appeal is from judgment of sentence imposed subsequent to conviction for burglary, theft and causing or risking a catastrophe. Appellant raises seven issues: (1) A Rule 1100 violation. (2) Failure to suppress a confession. (3) Failure to sustain a demurrer. (4) Not permitting a psychologist to testify regarding appellant's involuntary intoxication due to chronic alcoholism. (5) The amount of restitution exceeding appellant's ability to pay. (6) The verdict was against the law. (7) The verdict was against the weight of the evidence. We find that issues (3), (5), (6) and (7) are waived; and we find against appellant on issues (1), (2) and (4). Accordingly, judgment of sentence is affirmed.

## *Rule 1100*

Appellant argues that he is entitled to discharge as a result of a violation of Pa.R.Crim.P. 1100.[1]

---

**1.** Appellant also argues that the District Attorney did not establish due diligence in that four newer cases were tried before appellant came to trial. We know of no requirement that cases be tried in strict

Appellant was charged on January 22, 1978. Prior to the Rule 1100 run date, the prosecution filed a petition to extend. This was granted until November 3. Trial was commenced before that date.

At the extension hearing, it was brought out that the trial could not be held due to a number of factors creating judicial delay: a backlog of cases, the resignation of the President Judge and construction in the courthouse. Judicial delay constitutes a valid reason justifying a Rule 1100 extension. *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976).

Accordingly, we find that appellant does not prevail on this issue.

### Suppression

Appellant contends that the court below erred in failing to suppress the statement he gave to a State Police trooper the morning after the commission of the crimes. He contends that this statement was given involuntarily since he was intoxicated at the time it was made.

We note at the outset that this issue was presented to the court below in a tardy fashion, at the day of trial. The trial court noted this lack of timeliness but nonetheless chose to address the issue. As a result, the issue is preserved for appellate review.

In *Commonwealth v. Pinno*, 433 Pa. 1, 248 A.2d 26 (1968), Justice Roberts considered the effect of a tardily filed suppression motion.

We believe that a proper reading of Rule 2001 compels the conclusion that the question of waiver under 2001(b) is a matter solely for the court. 2001(b) provides four alternative excuses for a failure to meet the "five days before trial" requirement. The drafters' notes explicitly state that the last of these, if "the interests of justice require it," gives the court discretionary power to enter-

chronological order. Nor do we propose to establish such an unworkable requirement.

tain the application after the expiration of the time period.... When the trial judge decided the merits of appellant's suppression claim, he in effect exercised his discretionary power to excuse appellant's noncompliance with the five day rule.

*Commonwealth v. Pinno,* supra, 433 Pa. at 5–6, 248 A.2d at 29.

The rule dealt with in *Pinno* is not the one presently before us, but it was one of the rules consolidated to form the present rule—Pa.R.Crim.P. 323. The latter also includes the phrase if "the interests of justice" which was crucial to the rationale in *Pinno. Pinno* is, therefore, applicable to the case before us; and thus the trial court had within its discretion the decision to treat the tardy suppression motion. Given this discretion, "it no longer makes any sense to consider waiver." *Id.*

As we have said, appellant alleges that his intoxication at the time he made the statement rendered it involuntary and consequently inadmissible. The effect of such intoxication, if established, has been set out in a number of Pennsylvania Supreme Court cases.

Recent imbibing or the existence of a hangover does not make his confession inadmissible, but only goes to the weight to be accorded to it.

*Commonwealth v. Smith,* 447 Pa. 457 at 460, 291 A.2d 103 at 104 (1972).

Again, intoxication is a factor to be considered, but it is not sufficient, in and of itself to render the confession involuntary.

*Commonwealth v. Jones,* 457 Pa. 423 at 432, 322 A.2d 119 at 125 (1974).

In order for the intoxication to render the confession involuntary, it must have had a certain precise impact on the individual.

The test is whether there is sufficient mental capacity for the defendant to know what he was saying and to have voluntarily intended to say it.

78

*Commonwealth v. Culberson,* 467 Pa. 424 at 428, 358 A.2d 416 at 417 (1976).

The applicable burden of proof and appellate standard of review in this matter have also been detailed by case law.

■ The Commonwealth has the burden of proof as to voluntariness; it must be shown by a preponderance of the credible evidence. *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968).

The high court has stated that:

> ... our responsibility upon review is to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings.... In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. Goodwin,* 460 Pa. 516 at 522–523, 333 A.2d 892 at 895 (1975).

With these principles in mind, a review of the record reveals the following.

■ The State Police arrived at appellant's house the morning after the crimes had been committed. They explained the purpose of their visit and read him his *Miranda* rights. Appellant did not stand on those rights but made a statement which he later signed. At the suppression hearing, Trooper Behe testified that appellant said that he had been drunk the night before and was not feeling "100%." On the ultimate issue, the Trooper testified that, while appellant appeared somewhat unkempt and hungover, appellant was not intoxicated at the time of the interrogation. While there was testimony to the contrary—

> The trial judge elected to believe the detectives' testimony as to the appellant's condition and capacity at the time of giving his statement and not that of appellant and his family. An appellate court does not weigh evidence or pass upon the credibility of witnesses, and there is no

basis for us to hold as a matter of law that the court's finding of voluntariness of the confession was not adequately supported and well within the court's discretion. *Commonwealth v. Smith*, supra, 447 Pa. at 461, 291 A.2d at 104.

The denial of the motion to suppress is not, therefore, reversible.

## Demurrer

■ Appellant claims that the court below erred in not granting his demurrer to the charge of causing or risking a catastrophe.[2] "Since however, the defendant did not rest following this adverse ruling, but elected to put in a case in defense, the correctness of the ruling on the demurrer is no longer an available issue." *Commonwealth v. Ilgenfritz*, 466 Pa. 345 at 347, 353 A.2d 387 at 388 (1976).

In *Ilgenfritz*, the Supreme Court of this Commonwealth *chose*[3] to "treat the question as if properly framed, namely, whether the trial court erred in refusing defendant's motion in arrest of judgment. In doing so, of course, we consider all of the evidence at trial, not only that contained in the Commonwealth's case in chief." *Id.* Because appellant has also raised an issue regarding the verdict being against the law, we can address it, the properly framed issue.[4] The choice of addressing the improperly pleaded issue is consequently not before us.

## Involuntary Intoxication

Appellant argues that the trial court erred in not allowing a psychologist, Dennis Shapson, to testify. He was to have testified to appellant's involuntary intoxication at the time of the commission of the crimes. The alleged involuntary

**2.** 18 Pa.C.S.A. § 3302.

**3.** In a later case, following the above-quoted language in *Ilgenfritz*, that Court chose not to treat the improperly framed issue. *Commonwealth v. Sourbeer*, 492 Pa. 17, 422 A.2d 116 (1980).

**4.** As will be seen below, that issue is properly framed only in the sense that it is the correct issue post-trial. It had its own defects.

intoxication did not come about in the traditional ways the law has recognized such a state: being forced to consume alcohol or drugs, or consuming them without knowledge of their intoxicating contents.

A letter sent to the Public Defender by Shapson, and another staff member of the Altoona Hospital, psychiatrist Pauline Goldschmidt, succinctly states the theory of involuntary intoxication on which Shapson would have based his testimony.

> Mr. David L. Kuhn was seen by us on July 18, 1978. Mr. Kuhn is a chronic alcoholic.

> In our estimation, he is not capable of voluntarily refraining from the use of alcohol.

Since an appropriate offer of proof was made and the issue otherwise preserved for our review, only one question remains for our determination. If Shapson had testified as his letter and the offer of proof indicated, would it have had legal relevance? In other words, we must decide whether, as a matter of law, involuntary intoxication can be established through the existence of a form of chronic alcoholism which renders him "not capable of voluntarily refraining from the use of alcohol."[5] In order to make this determination, we will look to the purposes of criminal sentencing.

Perhaps the primary purpose of criminal sentencing is punishment. One rationale underlying the affirmative defense of involuntary intoxication is that a person should not be punished for committing a criminal act due to a condition for which he was not responsible.[6] Following this rationale, if punishment were the only reason for criminal sentencing, we would be obliged to find that an ungovernable compul-

---

5. The factual accuracy of such a condition is not before us here. For purpose of our review, we must assume that if the testimony had been given the fact finder would have credited it.

6. This is also the reason that voluntary intoxication is not a defense; he is responsible for his condition of intoxication. Even if a criminal act was committed as a consequence of intoxication, if he was voluntarily intoxicated, he is held legally responsible for those acts.

sion to drink could create the legal state of involuntary intoxication.[7]

However, there are other purposes of criminal sentencing other than punishment. One of these is prevention. In its commonly accepted forms, an involuntarily intoxicated person is not likely to commit another crime as a result of such intoxication. Thus, the prevention purpose of criminal sentencing is not applicable to the person involuntarily intoxicated in the usual sense.

This is not true of a person involuntarily intoxicated as a result of chronic alcoholism. In such a case, the likelihood of repeated intoxication and the resulting repeated commission of crimes, is, in contrast, very high indeed. Thus, criminal liability is appropriate for the purpose of prevention in a case like the one before us.

Another distinction can also be found in one of the other purposes of criminal sentencing: rehabilitation. For example, it would not be logical to impose criminal liability for purposes of rehabilitation on someone who has drunk some coffee which unbeknownst to him contained a hallucinogen and, as a consequence of its effects, committed a crime. Such a person would not be in need of rehabilitation. The person involuntarily intoxicated by virtue of chronic alcoholism is, again in contrast, in drastic need of rehabilitation.

Finally, another purpose of criminal sentencing is also applicable to people in appellant's alleged condition—restitution. Indeed, this constituted a portion of the sentence imposed on appellant.

To summarize, while it is not appropriate to impose criminal liability and judgment of sentence on a person involuntarily intoxicated through chronic alcoholism for the purpose of punishment, other purposes are served. Among

7. The dissent interprets our statement here as a denial that appellant would perceive sentencing as punishment. That is not what we have said here; nor would we gainsay the obvious by using that argument. The point is that, if the defense were proved, punishment would not be a basis for justifying sentencing. However, the other purposes of sentencing are met. Once those other purposes are present, appellant's personal appraisal of sentencing is quite beside the point.

these proper purposes are prevention, rehabilitation and restitution. All three of the latter purposes are served by the judgment of sentence in the case before us.[8]

 We conclude, therefore, that involuntary intoxication cannot, as a matter of law, be established through evidence showing that the criminal defendant was a chronic alcoholic incapable of voluntarily refraining from ingestion of alcohol. It follows from this that the evidence which Shapson would have given would not have had legal relevance as an affirmative defense. Consequently, there was no error in the trial court not allowing him to testify.

### Restitution

 Among the requirements of appellant's 15-year probation imposed at sentencing was that he pay a monthly minimum of $200 in costs and fines. This sum was to be forwarded to the owner of the burned-down funeral home.[9] Appellant argues that this amount exceeds his ability to pay and is therefore improper under the rule of Commonwealth v. Fuqua, 267 Pa.Super. 504, 407 A.2d 24 (1979).

---

8. The dissent responds that it is wrong to impose sentence on appellant because, if his defense were proved, he would not have done anything wrong. We are not unappreciative of the weight of this response, but, ultimately, we cannot adopt the result the dissent advocates. The dissent undervalues the interests of society in protecting itself from destructive acts. In the instant case a small businessman's establishment was burned down. A legal system which did not respond effectively to such acts would soon lose its basic validation— its acceptance by the populace.

In addition, a legal response to this situation has another purpose— as we have mentioned. While it *may* be that appellant won't be rehabilitated in prison it is certain that he won't be burning down anyone else's business while incarcerated.

Finally, the dissent seems to overlook the difference between imposing criminal sentence on a person for a status offense, (*being an alcoholic*), and allowing the imposition of sentence for the *commission of criminal acts* by not allowing the defense of being an alcoholic.

9. The record reveals that the owner's insurance allowed him to recover less than a fifth of the $113,000 loss he sustained.

This issue has not been preserved for our review as no written motion to modify sentence was filed with the court below in accordance with Pa.R.Crim.P. 1410.[10]

■ Another term of the probation imposed at sentencing was that: "... the defendant shall attend on a weekly basis the Church services at the Emmanuel Baptist Church in Claysburg or such other Church of the defendant's choosing as he may determine." At sentencing the Court stated: "The Court is not attempting to put anyone into any particular Church or anything of this nature, I'm trying to keep you within the light you have seen. That's the reason I have imposed that special condition of some Church service of your choosing."

The propriety of this portion of the sentence has not been presented to us on appeal. Nor does it constitute an illegal sentence in the narrow sense of that term such that we can raise it *sua sponte. Commonwealth v. Thomas,* 291 Pa.Super. 263, 435 A.2d 901 (1981). Nonetheless, we choose to comment [11] as a cautionary note to courts below. Such a requirement is most likely unconstitutional as a violation of the Establishment Clause of the First Amendment of the Constitution of the United States. The possible effectiveness of this probation requirement and its nonrestriction to any particular church do not alter this conclusion.

### Verdict against the law and against the weight of the evidence

■ Appellant argues that the verdict was against the law and against the weight of the evidence. These issues are also not preserved for appellate (or for that matter, post-trial) review.

While these issues were included in the post-verdict motions, they were not argued in the post-verdict brief. As a consequence, they are waived for purposes of appellate

---

**10.** Appellant was sentenced after Rule 1410 was in effect. The sentencing court also properly explained appellant's rights to him at sentencing; thus removing any valid excuse for this failure. *Commonwealth v. Dozier,* 294 Pa.Super. 249, 439 A.2d 1185 (1982).

**11.** We comment only on this matter. Such comments are not part of the holding of this opinion.

review. *Commonwealth v. Perry*, 279 Pa.Super. 32 at 35–37, 420 A.2d 729 at 731 (1980) (Price, J.).

Judgment of sentence affirmed.

MONTEMURO, J., files a concurring opinion.

SPAETH, J., files a dissenting opinion.

MONTEMURO, Judge, concurring:

I disagree with both the majority's and the dissent's analysis of the issue of involuntary intoxication, and so, although I too would affirm the trial court's judgment of sentence, I feel constrained to state my view on this issue.

In reaching their respective conclusions, both the majority and the dissent premise their analyses of the issue [1] on the purposes of criminal punishment. The decision of the United States Supreme Court in *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), serves as the conceptual forerunner of both opinions, although it is expressly cited only in the dissent. In my view, the attempt to directly relate the issue of chronic alcoholism as a basis for the defense of involuntary intoxication to the purpose of criminal punishment is an analytical *non-sequitur*. Rather, the issue herein is primarily an evidentiary question of whether the appellant's alleged chronic alcoholism was relevant to a defense of involuntary intoxication. Of necessity this inquiry must touch upon the effect of chronic alcoholism on criminal culpability. The question of the propriety of punishing a chronic alcoholic for crimes committed while intoxicated, a question never raised by either party in the trial court or before us, is subordinate to the first two questions. Thus, I do not believe that the issue of the propriety of punishing chronic alcoholics is properly before

---

**1.** The issue as stated by the appellant is: "Did the court err in not permitting the defense to present the testimony of Mr. Dennis Shapson?" Mr. Shapson is a Staff Psychologist at the Altoona Hospital Community Mental Health Center. The defense made an offer of proof that Mr. Shapson would testify that the appellant is a chronic alcoholic incapable of refraining from the use of alcohol. (N.T. October 23, 1978 at 194–6).

us. I further believe that this view is supported by the language of *Powell*. In *Powell v. Texas, id*, the question before the court was whether the punishment of a chronic alcoholic for the crime of public intoxication constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. In a plurality opinion, the Court held that it did not. However, *Powell*, by its own terms, is not applicable to the type of situation in this case. In the dissenting opinion of Fortas, J. (joined by Douglas, Brennan and Stewart, JJ.), it is stated:

> This case does not raise any question as to the right of the police to stop and detain those who are intoxicated in public, whether as a result of the disease or otherwise; or as to the State's power to commit chronic alcoholics for treatment. Nor does it concern the responsibility of an alcoholic for criminal *acts*. We deal here with the mere *condition* of being intoxicated in public.[2] (Emphasis in original)

---

[2] It is not foreseeable that findings such as those which are decisive here—namely that the appellant's being intoxicated in public was a part of the pattern of his disease and due to a compulsion symptomatic of that disease—could or would be made in the case of offenses such as driving a car while intoxicated, assault, theft, or robbery. Such offenses require independent acts or conduct and do not typically flow from and are not part of the syndrome of the disease of chronic alcoholism. If an alcoholic should be convicted for criminal conduct which is not a characteristic and involuntary part of the pattern of the disease as it afflicts him, nothing herein would prevent his punishment.

*Id*, 392 U.S. at 559, 88 S.Ct. at 2167. The limited applicability of the decision in *Powell* is stated even more strongly in the plurality opinion, *id*, 392 U.S. at 534–35, 88 S.Ct. at 2155–56.

I reiterate my position that the issue of the propriety of punishing chronic alcoholics is not before us because it has not been raised by the parties. If the issue were before us, I would stress the inapplicability of the *Powell* decision based on the express language therein. The true question before us is whether the trial court erred in excluding testimony regarding the appellant's chronic alcoholism,

which was offered to establish a defense of involuntary intoxication. I would find no error.

It is well-established that questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982); *Commonwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976); *Commonwealth v. Miller,* 303 Pa.Super. 504, 450 A.2d 40 (1982); *Commonwealth v. Krajci,* 283 Pa.Super. 488, 424 A.2d 914 (1981). The trial court found that the offered testimony "went to the question of voluntary intoxication which is not a valid defense under the law of this Commonwealth. 18 Pa.C.S.A. Sec. 308." (Lower Court Opinion at 6). Our determination then is whether the trial court abused its discretion in finding that the proffered evidence was not relevant to the issue of involuntary intoxication.

"Evidence which tends to establish a material fact in the case or which tends to make a fact at issue more or less probable is relevant." *Commonwealth v. Brown,* 489 Pa. 285, 303, 414 A.2d 70, 79 (1980); *Commonwealth v. Scott,* 480 Pa. 50, 54, 389 A.2d 79, 82 (1978); *Commonwealth v. Myers,* 439 Pa. 381, 266 A.2d 756 (1970). Involuntary intoxication as a defense to a crime is addressed by 18 Pa.C.S.A. § 308, which states:

> Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative (negate) the element of intent of the offense, except that the evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

The historical note to this section cited its similarity to § 2.08 of the Model Penal Code. The section addresses only voluntary intoxication, thus it is implied that involuntary intoxication would be a defense to a crime, and that a defendant would be permitted to introduce evidence rele-

vant to involuntary intoxication. No Pennsylvania case has ever held that the defense of involuntary intoxication is a viable one. Cf. *Commonwealth v. Todaro*, 301 Pa.Super. 1, 446 A.2d 1305 (1982) (defendant not permitted an instruction on involuntary intoxication where he inadvertently mixed alcoholic beverages with prescribed medication). The statute also fails to define "voluntary intoxication."

Assuming that "involuntary intoxication" is a viable defense to a criminal act in this Commonwealth, the question before us is whether evidence of chronic alcoholism can be a basis for the defense. The question is not whether it is fair to punish chronic alcoholics, but rather whether or not they possessed, at the time of the criminal act, the requisite *mens rea* to find them criminally culpable. It is the element of *mens rea* which is most important in distinguishing between voluntary and involuntary inebriates. As stated by one commentator:

> The defense of "voluntary" intoxication reflected compelling policy considerations: intoxication impaired the inebriate's ability to regulate his behavior and therefore made him less culpable than one who acted while sober, but the inebriate was blameworthy because he had freely assumed the impairment, thereby reducing his ability to protect himself and others against the risks created by his conduct .... The "involuntary" intoxication defense was based on the assumption that one who consumed an intoxicant against his will or without full awareness of the implications of his conduct was not blameworthy.

Note, *Chronic Alcoholism as a Defense to Crime*, 61 Minn.L.R. 901, 902–05 (1977). Thus, in the case of the involuntary inebriate there is no *mens rea*, and hence, no criminal culpability; whereas, in the case of the voluntary inebriate, he is deemed to be able to form a general intent to commit a criminal act, but not a specific intent. Thus, in many jurisdictions, voluntary intoxication will provide a defense to all crimes which require a specific intent, but not those crimes which require a general intent. In fact, the approach was taken by Pennsylvania under former § 308.

*See* Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 P.S. § 308; *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975). This approach, as we know, was changed by the 1976 amendment which limits the effect of voluntary intoxication to negating the specific intent to commit murder. *See* 18 Pa.C.S.A. § 308. As this court state din *Commonwealth v. Rumsey,* 309 Pa.Super. 137, 140, 454 A.2d 1121, 1122 (1983):

> [I]t is apparent that in amended § 308 the legislature in effect redefined the *mens rea* element of intentional or knowing crimes to include those cases when the putative offender performed the criminal act but was unable to form the criminal intent otherwise required solely because he was voluntarily drunk or drugged. *See* Pa. Supreme Ct. Commission on Standard Jury Instruction, Draft Report at 2 (April 24, 1976) (suggesting this interpretation). *Cf. Commonwealth v. Pickett,* 244 Pa.Superior Ct. 433, 368 A.2d 799 (1976) (amended § 308 is not just a procedural rule because in effect it punishes acts that would not have been criminal under prior § 308 or would have been punishable only as lesser crimes). Redefinition of the kind and quality of mental activity that constitutes the *mens rea* element of crimes is a permissible part of the legislature's role in the "constantly shifting adjustment between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man." *Powell v. Texas,* 392 U.S. 514, 536, 88 S.Ct. 2145, 2156, 20 L.Ed. 1254, 1269 (1968). In light of the history and nature of the voluntary intoxication defense and the purpose of a *mens rea* element in crimes, we are satisfied that the legislature has acted within permissible constitutional bounds in enacting amended § 308.

The effect of the amendment to § 308 is that a voluntarily intoxicated person is deemed to have the requisite *mens rea* to bring upon himself the consequences of criminal responsibility, even though his or her brain was little more than grey mush while performing the criminal act.

We must decide whether a person who drinks under an alleged compulsion of chronic alcoholism is to be classified as a voluntary or involuntary inebriate. In my view, chronic alcoholism is an insufficient basis to establish the defense of involuntary intoxication. In reaching this conclusion, I am persuaded by what I believe to be the weight of authority in other jurisdictions as well as by policy consideration.

My review of the law of other jurisdiction convinces me that involuntary intoxication is intoxication which is compelled by external force; *i.e.*, by physical compulsion by another, trickery, deception or artifice, and not that compelled by some internal compulsion. *Evans v. State,* 645 P.2d 155 (Alaska 1982); *Tacorante v. People,* 624 P.2d 1324 (Colo.1981) (heroin addiction); *Upshur v. State,* 420 A.2d 165 (Del.Sup.1980); *State v. McNally,* 336 So.2d 713 (Fla. App.1976); *McLaughlin v. State,* 236 Ga. 577, 224 S.E.2d 412 (1976); *Grimes v. Burch,* 223 Ga. 856, 159 S.E.2d 69 (1968); *People v. Quinn,* 46 Ill.App.3d 579, 4 Ill.Dec. 846, 360 N.E.2d 1221 (1977); *People v. Walker,* 33 Ill.App.3d 681, 338 N.E.2d 449 (1975); *People v. Walcher,* 42 Ill.2d 159, 246 N.E.2d 256 (1969); *State v. Palacio,* 221 Kan. 394, 559 P.2d 804 (1977); *State v. Seely,* 212 Kan. 195, 510 P.2d 115 (1973); *Commonwealth v. Sheehan,* 376 Mass. 765, 383 N.E.2d 1115 (1978); *State v. Patch,* 329 N.W.2d 833 (Minn. 1983); *State v. Bishop,* 632 S.W.2d 255 (Mo.1982); *State v. Bunn,* 283 N.C. 444, 196 S.E.2d 777 (1973); *Baggett v. State,* 220 Tenn. 592, 421 S.W.2d 629 (1967); *Loveday v. State,* 74 Wis.2d 503, 247 N.W.2d 116 (1976) (overruling *Staples v. State,* 74 Wis.2d 13, 245 N.W.2d 679 (1976), and *Roberts v. State,* 41 Wis.2d 537, 164 N.W.2d 525 (1969)). *See also* 10 U.L.A. Model Penal Code § 1.08(5)(6); Michigan Second Revised Criminal Code § 710. *See also generally* 22 C.J.S. Criminal Law § 69, p. 221, 73 A.L.R.3d 195; 8 A.L.R.3d 1236.[2]

**2.** It should be noted, however, that the chronic alcoholic may not be precluded from raising a defense based on his condition. Some jurisdictions have accepted a defense of insanity based on the toxic psychosis which can be triggered by the intensive, long-term use of alcohol. *See e.g., State v. Plummer,* 117 N.H. 320, 374 A.2d 431 (1977),

While the weight of authority is persuasive, I also think policy considerations strongly support the preclusion of chronic alcoholism as a basis for establishing the defense of involuntary intoxication.

> This approach should be rejected. Most inebriated persons do not commit crimes, despite alcohol's effect of loosening their inhibitions. Those inebriates who do intentionally cause harm deserve punishment. Moreover, it would be extraordinarily difficult to determine when alcoholism is sufficiently "chronic" or which defendant's drunken violence was sufficiently unanticipated to merit an intoxication defense. Because clear guidelines would be impossible to draw, jury discretion would be substantial. This could lead to inconsistent and discriminatory results, as well as a burdensome increase in spurious claims by defendant hoping for a sympathetic jury. Finally, society's interest in safety would be illserved by weakening sanctions against inebriates who intentionally cause harm to others, especially since their crimes often involve violent attacks on the person.

Note, *Alcohol Abuse and the Law*, 94 Harvard L.Rev. 1660, 1685 (1981). Additionally, I believe that the public's right to safety must be balanced against the rights of criminal defendants. Again, as stated by this court:

> Although mere overindulgence or intoxication are not so morally reprehensible as consciously inflicting injury upon another, the legislature may emphasize concerns other than moral culpability in determining the elements of a crime. *Powell v. Texas, supra.* For instance, in upholding the constitutionality of strict liability crimes, the U.S. Supreme Court noted that the legislature may balance the hardship to offenders against that to the victims, and impose responsibility upon those with a better opportunity to prevent the proscribed consequences. *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134,

and cases cited therein. *But cf., Commonwealth v. Hicks,* 483 Pa. 305, 396 A.2d 1183 (1979). However, because this issue is not before us, we do not decide it, nor do I suggest what the court's decision would be.

88 L.Ed. 48 (1943). That the hardship to victims is considerable is well-demonstrated. Drunk or otherwise intoxicated persons have been shown to commit nearly half the violent criminal acts that come to the attention of the police. More, *Legal Responsibility and Chronic Alcoholism*, 122 Am.J.Psych. 748, 753 (1966)

*Commonwealth v. Rumsey, supra*, 309 Pa.Super. at 143, 454 A.2d at 1124. There is no question that the chronic alcoholic faces considerable hardship, and that the propriety of incarcerating him is not clearcut. However, in the interest of public safety, and in the absence of legislative direction, I believe that under the present statute, chronic alcoholism is not to be equated with involuntary intoxication.

Consequently, I would hold that the evidence of appellant's chronic alcoholism was properly excluded by the trial court as irrelevant to the defense of involuntary intoxication. I concur in the result reached by the majority on all other issues.

SPAETH, Judge, dissenting:

I find myself unable to join either of my colleagues. Although they express themselves somewhat differently, their respective lines of reasoning seem to me essentially the same. Both assume that involuntary intoxication will *in some circumstances* be a defense to a criminal charge; for one who is involuntarily intoxicated may lack any criminal intent. *See* opinion by BROSKY, J., at 75; opinion by MONTEMURO, J., at 84. I agree with this assumption[1];

---

1. There is of course a distinction between voluntary and involuntary intoxication. As regards voluntary intoxication, it has been said that "[t]he usual statement of the rule is that intoxication is admissible when relevant to disprove a 'specific intent' which is an element of the crime charged, but not to disprove 'general intent' when that is the required mental element." Toll, Pa.Crimes Code Ann. § 308, Model Penal Code Comment, T.D. No. 9, pp. 2–13 (1974). Voluntary intoxication is no longer a defense to specific intent crimes other than murder. 18 Pa.C.S.A. § 308 (1983). As regards involuntary intoxication, we have assumed that proof of involuntary intoxication will negate the specific intent element of a crime. *See Commonwealth v. Scarborough*, 313 Pa.Super. 521, 533, 460 A.2d 310, 316 (1983) (evi-

my disagreement is with respect to the *definition of the circumstances* in which it is applicable.

Judge BROSKY would recognize involuntary intoxication as a defense in the case of "someone who has drunk some coffee which unbeknownst to him contained a hallucinogin and, as a consequence of its effects, committed a crime." Opinion by BROSKY, J., at 81. And while Judge MONTEMURO does not use such an illustration, nevertheless, as I understand his opinion, he agrees with it. Opinion by MONTEMURO, J., at 84 *et seq.* Also, it seems fair to say that with Judge BROSKY and JUDGE MONTEMURO would recognize involuntary intoxication as a defense in the case of someone who as a result of being forced to drink alcohol became so involuntarily intoxicated as to lack any criminal intent. But that is as far as either judge will go; neither will recognize involuntary intoxication as a defense, even if the defendant was so intoxicated as to lack any criminal intent, if the involuntary intoxication occurred because the defendant could not help drinking because he was a chronic alcoholic.

For my part, I see no distinction in principle between these three cases: drinking unknowingly; being forced by another person to drink; and being helpless to stop drinking. I should be somewhat surprised if appellant could prove that because he was a chronic alcoholic he was in fact helpless to stop drinking. However, as Judge BROSKY recognizes, that is what he offered to prove, and at this stage we must assume that he could prove it.[2] Accordingly, I should reverse and remand for a new trial with instructions to let him try to prove it.

dence did not justify involuntary intoxication defense); *Commonwealth v. Todaro*, 301 Pa.Super. 1, 4–6, 446 A.2d 1305, 1307–8 (1982) (same). *See also Commonwealth v. Bridge*, 495 Pa. 568, 573 n. 3, 435 A.2d 151, 154 n. 3 (1981) (Discussion of availability of voluntary intoxication as a defense. "We intentionally exclude from our present consideration any state of intoxication not voluntarily induced.").

2. There is an enormous literature on the nature and causes of alcoholism, *see,* generally, *G. Vaillant,* The Natural History of Alcoholism (1983) but given that appellant's offer of proof must be accepted, this is not the time to go into it; that should be left for trial.

In *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), a plurality of the Supreme Court rejected the argument that the cruel and unusual punishment clause of the eighth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment, prohibited the State of Texas from punishing the appellant, who claimed to be a chronic alcoholic, for public drunkenness. The appellant's argument was that as a result of his chronic alcoholism, he was incapable of refraining from public drunkenness, and that the cruel and unusual punishment clause prohibited the State of Texas from punishing him for behavior he could not control. In support of this argument, the appellant relied on *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758, *reh'g denied*, 371 U.S. 905, 83 S.Ct. 202, 9 L.Ed.2d 166 (1962), in which the Court had held that the cruel and unusual punishment clause prohibited a state from punishing someone for being a narcotics addict.

A plurality of the Court, in an opinion by Justice Marshall, joined by the Chief Justice and Justices Black and Harlan, concluded that the record was inadequate to support the trial court's finding that the appellant as a result of his chronic alcoholism was unable to refrain from public drunkenness. The plurality noted that the appellant had called only one expert, whose "testimony consumed a total of 17 pages .... [f]ive [of which] were taken up with a recitation of [the expert's] qualifications," *id.* 392 U.S. at 517, 88 S.Ct. at 2147, and that "[t]he State made no effort to obtain expert psychiatric testimony of its own, or even to explore with appellant's witness the question of appellant's power to control the frequency, timing, and location of his drinking bouts, or the substantial disagreement within the medical profession concerning the nature of the disease, the efficacy of treatment and the prerequisites for effective treatment," *id.* at 520, 88 S.Ct. at 2148. Moreover, and of special importance, the appellant's expert admitted on cross-examination that "when appellant was sober, the act of

taking the first drink was ... undertaken under the 'exceedingly strong influence' of a 'compulsion,' ....", but that the act was nevertheless "a 'voluntary exercise of his will' [because] the 'compulsion' ... was 'not completely overpowering.'" *Id.* at 525, 88 S.Ct. at 2151. Confronted with this record, the plurality held:

> We are unable to conclude, on the state of this record or on the current state of medical knowledge, that chronic alcoholics in general, and Leroy Powell in particular, suffer from such an irresistible compulsion to drink and to get drunk in public that they are utterly unable to control their performance of either or both of these acts and thus cannot be deterred at all from public intoxication....

*Id.* at 535, 88 S.Ct. at 2155.

In closing, the plurality said that "[i]t is simply not yet the time" to adopt as a constitutional rule that a chronic alcoholic may not be criminally punished for public drunkenness. *Id.* at 537, 88 S.Ct. at 2156.

Justices Black and Harlan, in a separate opinion by Justice Black, made it clear that their rejection of the appellant's argument was not contingent on the inadequacy of the record. They approached the issue much as does Judge BROSKY for this court, stating that "punishment of ... a defendant [for an action that was 'compelled'] can clearly be justified in terms of deterrence, isolation, and treatment." *Id.* at 540–41, 88 S.Ct. at 2158–59. Indeed, they went so far as to say that "the question whether an act is 'involuntary' is ... an inherently elusive question, and one which the State may, for good reasons, wish to regard as irrelevant." *Id.* at 544, 88 S.Ct. at 2160. Thus they foreclosed the issue of a chronic alcoholic's criminal responsibility, which the Chief Justice and Justice Marshall had left open.

The "swing vote" was Justice White's. He concurred in the result reached by the plurality of the Court on the ground that even if the appellant "could not have resisted becoming drunk ..., nothing in the record indicates that he could not have done his drinking in private." *Id.* at 553, 88

S.Ct. at 2164. He made it clear, however, that in his opinion a chronic alcoholic who suffers from an irresistible compulsion to drink cannot constitutionally be punished for yielding to that compulsion, without regard to whether the goals of criminal sentencing might be advanced by punishing him. Thus he said: "If it cannot be a crime to have an irresistible compulsion to use narcotics, *Robinson v. California*, 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758] (1962), I do not see how it can constitutionally be a crime to yield to such a compulsion." *Id.* at 548, 88 S.Ct. at 2162.

Justice Fortas, writing for the dissent, joined by Justices Douglas, Brennan, and Stewart, accepted the trial court's finding that the appellant was unable to refrain from public drunkenness, *id.* at 569, 88 S.Ct. at 2172, and concluded that *Robinson* prohibited the imposition of a criminal sentence on the appellant:

> Robinson stands upon a principle which, despite it subtlety, must be simply stated and respectfully applied because it is the foundation of individual liberty and the cornerstone of the relations between a civilized state and its citizens: Criminal penalties may not be inflicted upon a person for being in a condition he is powerless to change.

*Id.* at 567, 88 S.Ct. at 2171.

Thus, in *Powell* five Justices agreed that a chronic alcoholic may not be criminally punished for conduct that because of his alcoholism he could not avoid; two Justices would permit him to be punished anyway; and two Justices reserved their decision as to what they would do.

This case is of course different from *Powell*. First, appellant was not convicted of *being* intoxicated; he was convicted of criminal acts that he claims to have committed *while* he was intoxicated. Second, appellant has not argued that the cruel and unusual punishment clause precluded the trial court from punishing him; rather, he has argued that he should have been permitted to prove that because he was a chronic alcoholic, he could not avoid being so intoxicated that he did not know what he was doing when he did the

acts in question. I therefore do not suggest that *Powell* is, in any sense, controlling. But it is instructive. For just as appellant claims here, the appellant in *Powell* claimed to be a chronic alcoholic, and he relied on the consequent involuntariness of his intoxication in support of his conclusion that he should not be punished.

–2–

Judge BROSKY, in his opinion, properly assumes that appellant could have proved what he offered to prove—that because he was a chronic alcoholic, he could not avoid being so intoxicated that he did not know what he was doing. BROSKY, J., at 80, n. 5. Judge BROSKY then states that "[such] a person should not be punished for committing a criminal act due to a condition for which he was not responsible." *Id.* at 80. (footnote omitted). This reasoning seems to be in agreement with the five Justices in *Powell* who would not criminally punish a chronic alcoholic for conduct that because of his alcoholism he could not avoid. But then Judge BROSKY goes off on a different tack and holds that even so, a chronic alcoholic may be sentenced as a criminal, because "there are ... purposes of criminal sentencing other than punishment." *Id.* at 81. These purposes, he explains, are prevention, rehabilitation and restitution; of these, he particularly emphasizes prevention, or public safety. *Id.* at 82. Since these purposes will be served here, he continues, "involuntary intoxication cannot, as a matter of law, be established through evidence showing that the criminal defendant was a chronic alcoholic incapable of voluntarily refraining from ingestion of alcohol." *Id.* at 82.

Judge MONTEMURO's reasoning is similar. Thus he says that "in the case of the involuntary inebriate, there is no *mens rea*, and hence, no criminal culpability...." MONTEMURO, J., at 87. In his view, however, the chronic alcoholic may not be classified as an involuntary inebriate. *Id.* at 89. While acknowledging that "the chronic alcoholic faces considerable hardship, and that the propriety of incarceration is not clear cut," *id.* at 91, he

concludes, as does Judge BROSKY, that "in the interest of public safety," *id.*, incarceration may nevertheless be warranted.

I am unpersuaded by this reasoning.

In the first place, *any* criminal sentence is, so far as the criminal is concerned, a punishment. His pain is lessened not at all by the sentencing judge saying, "I'm not punishing you by committing you to prison; I'm only preventing you from getting drunk again, and helping you get well." In addition, the purposes the majority says will be served will not be served. For although by committing the alcoholic to prison, the judge will prevent him from getting drunk, the prevention will last only so long as the alcoholic *is* in prison. I know of no reason—and my colleagues offer none—to suggest that when the alcoholic is released from prison, he will have been rehabilitated, or helped even one step on the way. I agree with what Judge Fortas said in *Powell:*

> It is entirely clear that the jailing of chronic alcoholics is punishment. It is not defended as therapeutic, nor is there any basis for claiming that it is therapeutic (or indeed a deterrent). The alcoholic offender is caught in a "revolving door"—leading from arrest on the street through a brief, unprofitable sojourn in jail, back to the street and, eventually, another arrest. The jails, overcrowded and put to a use for which they are not suitable, have a destructive effect upon alcoholic inmates.
>
> Finally, most commentators, as well as experienced judges, are in agreement that "there is probably no drearier example of the futility of using penal sanctions to solve a psychiatric problem than the enforcement of the laws against drunkenness."

*Id.* at 564–65, 88 S.Ct. at 2170–71 (footnotes omitted).

But there is an even greater difficulty with my colleagues' reasoning. It is not simply that the result anticipated by them will not occur. Assume that the result *did* occur—that the chronic alcoholic *was* rehabilitated by being imprisoned. That might be *useful.* But it would be *wrong.*

Let us suppose a case in which the evidence shows that the defendant did not know what he was doing because he was dead drunk, and that he was dead drunk because he drank a beverage that he honestly and reasonably believed to be harmless but that in fact had a high alcoholic content. My colleagues agree that such a defendant should not be criminally sentenced, Judge BROSKY giving as the reason that as the incident is not likely to happen again, the purposes of prevention and rehabilitation would not be served. BROSKY, J., at 79–81. But the much more fundamental reason such a defendant should be sentenced is that *he has done nothing wrong.* A prison is not an institution to educate or to heal, like a school or a hospital. We do not—at least, we should not—commit people to prison "for their own good." But that is what my colleagues say may be done with appellant. I am by no means unmindful of considerations of public safety. I quite agree that our "legal system [must] respond effectively" to actions committed by chronic alcoholics. BROSKY, J., at 82 n. 8. But it is a mistake, I suggest, to assume that the only effective response is resort to the criminal law.

For my part, I see no distinction in principle—that is, as a matter of law—between the case of someone who became involuntarily intoxicated because he did not know what he was drinking, and someone who became involuntarily intoxicated because, while he did know what he was drinking, he could not help drinking it because he was a chronic alcoholic. Of course, there may be a distinction as a matter of fact: The chronic alcoholic may not be able to prove that he was as powerless as he claims he was. That happened in *Powell.* But that is not the issue here. The issue here is whether he should be permitted to try to prove it. In *Powell,* the trial judge did permit him to try. Here, the trial judge did not permit him to try, and I believe that was error. For I agree with the five Justices in *Powell,* that the "cornerstone of the relations between a civilized state and its citizens" is the principle that "[c]riminal penalties may

not be inflicted upon a person for being in a condition he is powerless to change." *Id.* at 567, 88 S.Ct. at 2171.

The judgment of sentence should be vacated and the case remanded for a new trial consistent with this opinion.